## MATTER OF SALIM

### In Exclusion Proceedings

### A-26110301

*Decided by Board September 29, 1982*

(1) Asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. 1158, denied as a matter of discretion to excludable alien who arrived in the United States with a fraudulent passport, despite grant of temporary withholding of deportation to Afghanistan pursuant to section 243(h) of the Act, 8 U.S.C. 1253(h). Under the Refugee Act of 1980, 243(h) relief to eligible aliens is mandatory, but asylum is discretionary.

(2) The applicant's deportation to Afghanistan is temporarily withheld pursuant to section 243(h) because that country is one of the countries to which the applicant may now be deported pursuant to section 237(a) of the Act, 8 U.S.C. 1227(a), as amended by the Immigration and Nationality Act Amendments of 1981. Deportation to Pakistan is not withheld because 243(h) relief is "country specific" and no likelihood of persecution in Pakistan has been established.

(3) Applicant sufficiently established that he may be singled out for persecution in his native Afghanistan for opposing the ongoing Russian invasion and refusing to join the Soviet controlled Afghan army in its war against the Afghan rebels opposing the invasion. State Department Bureau of Human Rights and Humanitarian Affairs (BHRHA) opinion supporting the alien's persecution claim given significant weight.

(4) In close persecution cases such as those in which the State Department BHRHA agrees with the applicant's fears of persecution, the immigration judge should ordinarily consider the discretion aspects of the asylum application to avoid a remand solely on that issue.

EXCLUDABLE:
  Order: Act of 1952—Sec. 212(a)(19)[8 U.S.C. 1182(a)(19)]—Entered the United States by fraud or by willfully misrepresenting a material fact

  Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Not in possesion of a valid unexpired visa or other valid entry document

ON BEHALF OF APPLICANT:
Barbara A. Nelson, Esquire
c/o Arthur Pollack, Esquire
225 Broadway
New York, New York 10007

ON BEHALF F SERVICE:
Joanna London
Acting Appellate
Trial Attorney

BY: Milhollan, Chairman, Maniatis, Dunne, and Morris, Board Members. Concurring and Dissenting Opinion, Vacca.

The applicant appeals from the March 24, 1982, decision of the immigration judge denying his applications for asylum pursuant to section 208 of the Immigration and Nationality Act, 8 U.S.C. 1158, and temporary withholding of deportation pursuant to section 243(h) of the Act, 8 U.S.C. 1253(h). The appeal will be sustained in part and dismissed in part. The immigration judge's decision will be modified so as to deny the application for political asylum as a matter of discretion but grant the application for temporary with holding of deportation to Afghanistan.

The applicant's excludability under section 212(a)(19) and 212(a)(20) of the Act, 8 U.S.C. 1182(a)(19) and 1182(a)(20), is not at issue and was conceded at the exclusion hearing on March 24, 1982 (Tr. p. 1). The applicant arrived in the United States from Pakistan on February 18, 1982, with someone else's passport which he had fraudulently purchased in order to obtain a visa as a nonimmigrant visitor for business. *See* section 101(a)(15)(B)(1), 8 U.S.C. 1101(a)(15)(B)(1). He appeals from the immigration judge's conclusion that he had not established the requisite well-founded fear of persecution in his native Afghanistan[1] and therefore was ineligible for asylum and temporary withholding of deportation. The immigration judge reached that conclusion despite a State Department of Bureau of Human Rights and Humanitarian Affairs (BHRHA) advisory opinion dated March 12, 1982, that the applicant had established a well-founded fear of persecution in his native country (Ex. 4).

We agree with the applicant that he has established the requisite probability of persecution in Afghanistan.[2] The applicant contended that he had been a member of the Mujahidin rebels in Kandahar and that two of his brothers have been arrested by the Soviet controlled Babrak regime for similar membership. Another brother was taken by Russian

---

[1] Under section 7 of the Immigration and Nationality Act Amendments of 1981, Pub. L. 97-116, 95 Stat. 1611 (Dec. 29, 1981), Afghanistan is one of the countries to which the applicant may be deported pursuant to section 237(a) of the Act, 8 U.S.C. 1227(a). The previous language limited deportation to the "country whence he came," Pakistan. The applicable portions of the newly enacted section read as follows:

    (1) Any alien . . . arriving in the United States who is excluded shall be . . . deported . . . to the country in which the alien boarded the . . . aircraft on which he arrived in the United States . . . .

    (2) If the government of the country designated in paragraph (1) will not accept the alien into its territory, the alien's deportation shall be directed by the Attorney General, in his discretion and without necessarily giving any priority or preference because of their order as herein set forth, either to—

        (A) the country of which the alien is a subject, citizen, or national;

        (B) the country in which he was born;

        (C) the country in which he has a residence; or

        (D) any country which is willing to accept the alien into its territory, if deportation to any of the foregoing countries is impracticable, inadvisable, or impossible.

[2] We therefore do not reach the applicant's contentions regarding *Stevic* v. *Sava*, 678 F.2d 401 (2 Cir. 1982); *Cf. Matter of Dunar*, 14 I&N Dec. 310 (BIA 1973).

troops at Kandahar, and the applicant does not know his whereabouts or whether he is still alive (Ex. 3). The immediate reason for his fleeing Afghanistan was that he refused to join the Soviet controlled Afghan army in its war against Afghan rebels presently fighting against the Soviet invasion (Tr. p. 3).

The State Department BHRHA conclusion that the applicant would be persecuted is consistent with its report on Afghanistan in the 1981 Country Reports on Human Rights Practices at 929, 931, Joint Committees of the Senate and House of Representatives, 97th Congress, 1st Session (1981).[3] The report emphasizes that due to mass desertion by Afghan soldiers who refuse to fight under Soviet command against their compatriots, the army resorts to dragooning and forcibly impressing into its forces men and boys as replacements. This clearly differs from persecution claims by aliens who merely seek to avoid military service in their country. *See Kovac v. INS*, 407 F.2d 102 (9 Cir. 1969). Under the facts of this case, we attach significant weight to the State Department's conclusion that this applicant would be persecuted if returned to Afghanistan. Consequently, we conclude that the applicant has established a well-founded fear of persecution despite the immigration judge's conclusion to the contrary. The immigration judge's specific finding that the applicant left Afghanistan for mere economic reasons (i.j. dec. p. 3) apparently stemmed from a misunderstanding of the applicant's testimony that he came to the United States seeking employment (Tr. p. 7). That statement was a repetition of his immediately preceding testimony that he left Pakistan because he could not support his family left behind in Afghanistan, while unemployed in Pakistan (Tr. p. 6). It was not an explanation of why he left Afghanistan.

Having concluded that the applicant established the requisite likelihood of persecution, a grant of temporary withholding of deportation to Afghanistan is required in this case pursuant to section 243(h) of the Act as amended by the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 (March 17, 1980). That section now specifies that "the Attorney General shall not deport or return any alien . . . to a country if the Attorney General determines that such alien's life or freedom would be threatened on account of . . . political opinion." Under section 243(h) as drafted prior to the 1980 Amendment such relief was discretionary.[4]

---

[3] A State Department BHRHA opinion supporting an alien's contention that he will be persecuted in his native country should be given significant weight, particularly where supporting evidence and testimony supports such a conclusion. *See Matter of Saban*, 18 I&N Dec. 70 (BIA 1981); *Matter of Francois*, 15 I&N Dec. 534 (BIA 1975).

[4] The previous language of section 243(h) read: "the Attorney General is authorized to withhold deportation." The case before us does not involve any issue of ineligibility for relief under the grounds set forth in section 243(h)(2). Moreover, this applicant is not deportable under the provision of section 241(a)(19) of the Act.

We next address the question of asylum which section 208(a) of the Act provides is discretionary in nature. It specifically states that an alien applicant "*may* be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. 1101(a)(42)(A)." (Emphasis supplied.) Once it is determined that the requisite probability of persecution has been established for section 243(h) relief, such a conclusion is also binding on the issue of persecution for purposes of asylum under section 208 of the Act. *Matter of Lam*, 18 I&N Dec. 15 (BIA 1981). Therefore, the applicant's statutory eligibility for asylum has been established. However, the Service contends that the application for political asylum in the United States should be denied as a matter of discretion due to the circumstances of his arrival in the United States with a fraudulently purchased passport bearing someone else's name. Similarly, the State Department BHRHA recommended in its advisory letter that the asylum application be denied for policy considerations since the applicant misused our immigration laws to gain an advantage over all other similarly situated Afghan refugees in Pakistan who are following the established procedures for legally immigrating to the United States.

This Board has not previously considered the exercise of discretion in asylum cases where it was found that the alien would be persecuted if returned to his native country. Until May 1979 neither immigration judges nor this Board addressed asylum claims, as jurisdiction to adjudicate asylum applications then lay exclusively with the District Directors. The immigration judges and this Board only had jurisdiction to consider applications for withholding of deportation under section 243(h). Effective May 19, 1979, however, the regulations gave authority to immigration judges and this Board to consider asylum applications made after the commencement or completion of deportation proceedings. *See* 8 C.F.R. 108.3. Interim regulations promulgated pursuant to the Refugee Act of 1980 similarly provide that asylum applications made after the institution of exclusion or deportation proceedings shall be considered by immigration judges. *See* 8 C.F.R. 208.3(b) (effective June 1, 1980). In view of this Board's recent acquisition of jurisdiction over asylum claims and the revision of the laws in this area in 1980, many issues raised before the Board relating to asylum are issues of first impression.

The language in section 208(a) specifying the discretionary nature of asylum relief is clear, and since that section was enacted subsequent to the 1967 Protocol it controls over any conflicting language in the protocol under the applicable rules of statutory interpretation. Consequently, under the present statute an otherwise eligible[5] alien whom the Attor-

---

[5] Aliens who persecuted others abroad and specified classes of criminals are precluded

ney General determines that his life or freedom would be threatened in his native country on account of race, religion, nationality, membership in a particular social group, or political opinion is entitled to 243(h) relief and may also be granted asylum relief, but only as a matter of discretion.

Section 243(h) relief is "country specific" and accordingly, the applicant here would be presently protected from deportation to Afghanistan pursuant to section 243(h). But that section would not prevent his exclusion and deportation to Pakistan or any other hospitable country under section 237(a) if that country will accept him.[6] In contrast, asylum is a greater form of relief. When granted asylum the alien may be eligible to apply for adjustment of status to that of a lawful permanent resident pursuant to section 209 of the Act, 8 U.S.C. 1159, after residing here one year, subject to numerical limitations and the applicable regulations. *See* 8 C.F.R. 209. Considering this relationship between asylum and 243(h) relief, we now examine the discretionary factors in this case.

As stated above, the Board had never before considered a discretionary denial of asylum relief. However, the lack of direct precedents does not mean that useful guidelines are unavailable. For example, 8 C.F.R. 208.8(f)(1) precludes the District Director from granting asylum relief to specific classes of applicants, and 8 C.F.R. 208.8(f)(2) states that the District Director shall consider all relevant factors such as whether an outstanding offer of resettlement is available to the applicant in a third country and the public interest involved in the specific case. The regulations, in essence, summarize the specific preclusions in the Act against aliens who persecuted others abroad with this Board's and the judicially developed principles for the exercise of discretionary relief from deportation. *See Rosenberg v. Woo*, 402 U.S. 49 (1971). Although those regulations are addressed to the District Director and are not binding on this Board, we consider them as useful guidelines in the exercise of discretion over asylum requests.

Attempting entry into the United States by way of fraudulently obtained documentation has consistently been considered a strong negative discretionary factor. *See Balami v. INS*, 669 F.2d 1157 (6 Cir. 1982). This applicant is excludable under section 212(a)(19) of the Act. We note that section 212(a)(19) excludability would require a waiver pursuant to section 209(c), 8 U.S.C. 1159(c), for refugee adjustment of status cases.[7] Finally, as the Service and the State Department letter

---

from obtaining 243(h) relief. *See Matter of Rodriguez-Palma*, 17 I&N Dec. 465 (BIA 1980); *Matter of Martinez-Rivero*, 18 I&N Dec. 75 (BIA 1981); *Matter of Ballester-Garcia*, 17 I&N Dec. 592 (BIA 1980); Compare, *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982).

[6] Section 237(a). *See* note 1 above.

[7] Under the terms of section 209(c), the provisions of sections 212(a)(14), (15), (20), (21), (25), and (32), do not apply to an alien seeking adjustment of status under section 209. The

suggested, the public interest requires that we do not condone this applicant's attempt to circumvent the orderly procedures that our government has provided for refugees to immigrate lawfully. The fraudulent passport was obtained after the applicant had escaped from Afghanistan, with the sole purpose of reaching this country ahead of all the other refugees awaiting their turn abroad. This is not the case where an alien was forced to resort to fraudulently obtained documentation in order to escape or prevent being returned to the country in which he fears persecution. *See Matter of Ng*, 17 I&N Dec. 536 (BIA 1980). This Board finds that the fraudulent avoidance of the orderly refugee procedures that this country has established is an extremely adverse factor which can only be overcome with the most unusual showing of countervailing equities. This case before us does not present such equities. Consequently, the application for asylum relief will be denied as a matter of discretion.

A final issue remains in this case. At oral argument counsel for this applicant argues that if asylum is denied as a matter of discretion on the basis of the record before us, a remand for a further finding on the discretionary issue should be ordered. He contends that the applicant has been cooperating with United States authorities combating the growing use of the subterfuge of obtaining fraudulent passports to improperly obtain nonimmigrant visas abroad, fly into the United States and file asylum applications.

First, we note that no evidence has been offered to that effect. No government official recommends that his alleged cooperation be considered favorably in this asylum application so as to overcome the heavily negative factors in this case. In any event, attempting to enter the United States by using fraudulent documents is a felony pursuant to 18 U.S.C. 1546. By cooperating with United States authorities in their investigation this alien might gain clemency from such authorities and avoid prosecution. More importantly, even if we accept the representation in this regard as true, such cooperation is not a sufficient significant factor to warrant granting asylum relief as a matter of discretion in this case. The motion to remand will accordingly be denied.

We finally note that the record of unfavorable discretionary factors was unusually well documented in this case, and therefore, sufficiently ripe for our review. In close persecution cases, however, such as those in which the State Department BHRHA agrees with an applicant's fears of persecution, the immigration judge should ordinarily consider

---

Attorney General "*may* waive any other provision of such section (other than paragraphs (27), (29), or (33) and other than so much of paragraph (23) as relates to trafficking in narcotics) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." (Emphasis added).

the discretion aspects of the asylum case to avoid a remand solely on that issue.

**ORDER:** The appeal from the denial of asylum relief will be dismissed, the appeal from the denial of 243(h) relief to Afghanistan will be sustained and the motion to remand denied.

**FURTHER ORDER:** The applicant is excluded and deported to Pakistan.

**FURTHER ORDER:** The applicant's deportation to Afghanistan pursuant to sections 237(a)(2)(A) and (B) if the government of Pakistan refuses to accept his deportation to that country pursuant to section 237(a)(1), will be temporarily withheld as provided by section 243(h) of the Act.

CONCURRING AND DISSENTING OPINION: Fred W. Vacca, Board Member

I respectfully concur in part and dissent in part.

The immigration judge found the applicant excludable under section 212(a)(19) and (20) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(19) and (20), as an immigrant who procured his visa by fraud and who was not in possession of a valid unexpired visa or other necessary documents at the time of his application for admission to the United States. The applicant applied for asylum under section 208 of the Act, 8 U.S.C. 1158, and withholding of deportation under section 243(h) of the Act, 8 U.S.C. 1253(h). The immigration judge denied his applications. The applicant appealed. In its decision, the majority of the members of the Board of Immigration Appeals dismissed the appeal from the denial of asylum relief, sustained the appeal from the denial of withholding of deportation, and denied the applicant's motion to remand the record of proceedings. The majority ordered the applicant excluded and deported to Pakistan and further ordered that the applicant's deportation to Afghanistan be temporarily withheld as provided in section 243(h) of the Act. I concur in the conclusions of the majority that the applicant is excludable as charged, that his asylum application should be denied and that his motion to remand should be denied. However, I do not agree that the applicant has met his burden of establishing statutory eligibility for withholding of deportation and believe that the majority erred by granting that relief.

The record reveals that the applicant is a 27-year-old native and citizen of Afghanistan who entered Pakistan in January of 1982 and resided there for less than one month. The applicant departed Pakistan and arrived in the United States on February 18, 1982. In support of his applications for asylum and withholding of deportation, the applicant testified at his hearing that he left Afghanistan because he is an anti-

communist and feared that the existing government would incarcerate or otherwise harm him because he refused to join the government's army. He further testified that he belonged to a rebel organization in Afghanistan known as the "Mujahidin" and that he aided that organization by distributing leaflets and papers. The applicant related that two of his brothers were employed by the previous regime in Afghanistan, that they opposed the present regime, and that because of that opposition they were imprisoned by that government. The applicant also stated that another brother went into the Russian Army, that he has not heard from him since that time, and that he does not know the whereabouts of that brother. The applicant testified that he left his family in Afghanistan when he went to Pakistan. He also stated that he departed Pakistan for the United States because he did not desire to live in Pakistan, that there was nothing for him to do there, and that he did not have enough money to buy land in Pakistan. Apart from his testimony, and his written application for asylum, the applicant offered no other evidence to support his claim.

A letter from the Bureau of Human Rights and Humanitarian Affairs, Department of State, dated March 12, 1982, is of record. That letter which was written at the request of the Immigration and Naturalization Service informs the reader that since the 1979 Soviet invasion of Afghanistan, more than three million Afghans fled into neighboring countries where they have obtained temporary refuge. The State Department letter contains no specific information relating to the applicant or his activities in Afghanistan. It did contain the opinion that the applicant has established a well-founded fear of persecution in Afghanistan. However, it is clear from a reading of the letter that this opinion was predicated upon the assumption that the information provided by the applicant in his application for asylum (Form I-589) is true. It does not appear that the opinion was based on specific, independent information known to the Department of State.

An applicant for asylum or withholding of deportation must show that, if deported, he would likely be subject to persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. Section 208(a) of the Act. *See* section 243(h) of the Act; *Matter of McMullen,* 17 I&N Dec. 542 (BIA 1980), *rev'd on other grounds,* 658 F.2d 1312 (9 Cir. 1981). An undocumented assertion or an apprehension which is purely subjective is not sufficient to support a persecution claim under the statute. An applicant must present objective evidence that he has a well-founded fear that he is likely to be singled out for persecution by government officials in the country of deportation. *See McMullen v. INS, supra; Kashani v. INS,* 547 F.2d 376 (7 Cir. 1977); *Stevic v. Sava,* 678 F.2d 401 (2 Cir. 1982); *Matter of Chumpitazi,* 16 I&N Dec. 629 (BIA 1978).

Upon a review of this record, I find that the applicant has failed to establish his persecution claim. The transcript of the minutes of the exclusion hearing shows that only the applicant testified. Apart from the submission of his asylum application, no other documents were furnished by the applicant in support of his claim. I find not a single item of probative, objective evidence in the record to satisfactorily corroborate the applicant's story. The applicant's testimony is that he is an anti-communist, that he refused to join the Afghan army and that, for these reasons, he believes he would be in danger from the present regime in Afghanistan if returned to that country. The record, however, contains no corroborative evidence of a particularized nature to establish that he was politically active in Afghanistan, that he opposed the present government in that country or, for that matter, that he fled Afghanistan to avoid service in the army.

. A letter of the Department of State relating to a persecution claim is admissible into evidence in these proceedings. *Pereira-Diaz v. INS*, 551 F.2d 1149 (9 Cir. 1977); *Matter of Francois*, 15 I&N Dec. 534 (BIA 1975). However, such letters are advisory in nature and not binding on the Board of Immigration Appeals. *Matter of Exilus* 18 I&N Dec. 276 (BIA 1982). The weight to be accorded an advisory opinion will be determined by examining its probative quality. In this case, the advisory opinion contains no particularized information concerning the applicant or his activities in Afghanistan. The letter is also devoid of specific reasons for the opinion other than the expressed reliance on the assumption that the applicant's story is true. In view of these circumstances, I find that the advisory opinion has little or no probative value and, therefore, I choose not to rely upon it in my consideration of the applicant's claim for withholding of deportation. The reliance of the majority on the advisory opinion of the Department of State and the 1981 Country Reports on Human Rights Practices, Joint Committees of the Senate and House of Representatives, 97th Congress, 1st Session (1981)[1] is, in my view, unwarranted in light of the generalized nature of the opinion and the report and the fact that the applicant has offered nothing more than a bare and unsubstantiated claim of persecution.

For the above reasons, I would find that the applicant has not met his burden of proof and would deny his applications for asylum and withholding of deportation. Accordingly, I would dismiss his appeal and deny his motion to remand the record of these proceedings.

---

[1] I note that the Country Reports on Human Rights Practices cited by the majority in its decision do not identify the applicant or relate specifically to the applicant or his activities in Afghanistan.