**Mohamad Homaun WALAI, Plaintiff,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

No. 82 Civ. 7779(DNE).

United States District Court, S.D. New York.

Dec. 30, 1982.

Charles Aronowitz, New York City, of counsel, for plaintiff.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., Thomas E. Moseley, Sp. Asst. U.S. Atty., of counsel, for defendant.

MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiff, Mohamad Homaun Walai ("Walai") is a citizen of Afghanistan who left that country in early 1981 and went to Pakistan where he lived for fourteen months. Walai arrived in the United States from Pakistan on March 6, 1982 with a passport which he had fraudulently purchased for $2,300 in order to obtain a visa as a nonimmigrant visitor for business. *See* 8 U.S.C. § 1101(a)(15)(B). Upon his arrival in the United States, Walai was detained for a hearing on excludability. The government charged that Walai should be excluded from the United States pursuant to 8 U.S.C. § 1182(a)(20) because he was not in possession of a valid immigrant visa or other document with which to enter the United States.

Walai conceded that he is excludable under 8 U.S.C. § 1182(a)(20), but requested

political asylum on the ground that he would be persecuted if he was returned to Afghanistan. Walai also applied pursuant to 8 U.S.C. § 1253(h) for an order temporarily withholding deportation to Afghanistan. An applicant for asylum or withholding of deportation must demonstrate that, if deported, he would likely be persecuted on the basis of his race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1253(h).

On May 14, 1982 a hearing was held before an Immigration Judge who ordered that Walai be excluded and deported from the United States and denied both of Walai's applications. In denying Walai's applications, the judge considered an advisory opinion from the Department of State Office of Human Rights and Humanitarian Affairs, dated April 6, 1982 (the "advisory opinion"). The advisory opinion, although noting that Walai had established a well-founded fear of persecution in Afghanistan, recommended against a grant of asylum because Walai "did not apply for refuge resettlement in the United States while he was in Pakistan." Advisory Opinion at 1. The advisory opinion went on to conclude as follows:

> Asylum in the United States is intended to provide a sanctuary for persons fleeing persecution. It is not intended to be a substitute for nor an alternative to the immigration laws and policies of this country, and should not become a vehicle of convenience for applicants who may wish to circumvent our immigration laws.

Advisory Opinion at 2.

Walai appealed from the decision of the Immigration Judge, and the Board of Immigration Appeals modified the order so as to deny the application for political asylum but granted the application for temporary withholding of deportation to Afghanistan. In an opinion dated November 2, 1982 the Appeals Board found that although Walai had established the requisite clear probability of persecution warranting § 1253(h) relief, the denial of political asylum was properly within the discretion of the immigration judge due to the circumstances of Walai's arrival in the United States with a fraudulently procured passport. The Appeals Board further ordered that if the government of Pakistan refuses to accept Walai upon his deportation to that country, then his deportation would be withheld pursuant to § 1253(h).

Walai commenced this action by the filing of a complaint on November 23, 1982 alleging that the manner in which the Immigration and Naturalization Service ("INS") intends to deport Mr. Walai "is contrary to the intention of the order of the Board of Immigration Appeals." Complaint ¶ 7. The INS intends to deport Walai back to Pakistan pursuant to the following procedure:

> 6. ... INS intends to deport Mr. Walai back to Pakistan by returning him to the custody of KLM Airlines which brought him to this country. On the flight back to Pakistan, Mr. Walai will be accompanied by an agent and employee of the United States Government and, on arrival in Pakistan, that individual will present Mr. Walai for return to Pakistan.
> 7. In the event that Mr. Walai is refused reentry to Pakistan, he will be returned to the United States at no expense to himself. At that point he may request parole from the custody of INS pursuant to Section 212(d)(5) of the [Immigration and Nationality] Act, 8 U.S.C. § 1182(d)(5), in the exercise of discretion while alternative means to effect his deportation are considered.

Affidavit of James A. Jasey, Deputy Director for the New York District Office of the United States Immigration and Naturalization Service, sworn to on December 13, 1982, at ¶¶ 6 and 7.

The relief sought in the complaint is a judgment that the deportation of Walai to Pakistan "without the concurrence of the Government of Pakistan ... is contrary to the order of the Board of Immigration Appeals and, therefore, improper." Plaintiff does not challenge the authority or propriety of the INS in ordering Walai to be deported to Pakistan. *See* Reply to Memorandum in Opposition, filed December 22,

1982, ("Reply Memo") at 1. Rather, plaintiff contends that the order of the Board of Immigration Appeals, and "established procedure" of the INS require that INS obtain consent from the government of Pakistan before deporting Walai. *See* Reply Memo at 1–2. In further support of his position Walai contends that the deportation procedure contemplated by the INS is "irrational" as the cost incurred by the government in having an agent travel to and from Pakistan is considerably greater than obtaining the prior consent of the government of Pakistan.[1]

The court finds that there is no merit in plaintiff's position that, in effect, would have this court dictate the manner in which a deportation is to be effected. As courts have consistently held, the scope of judicial intervention is narrowly circumscribed in this area of executive discretionary authority. *See Landon v. Plasencia,* —— U.S. ——, ——, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) (power to "exclude aliens is a sovereign prerogative"); *Immigration and Naturalization Service v. Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981); *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972); *Wan Shih Hsieh v. Kiley,* 569 F.2d 1179, 1181 (2d Cir.), *cert. denied,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978). A similar contention to that raised by plaintiff in the present case was raised and rejected in *United States of America ex rel Tom We Shung v. Murff,* 176 F.Supp. 253 (S.D.N.Y. 1959), *aff'd,* 274 F.2d 667 (2d Cir.1960). In *Shung,* the court categorically rejected a requirement that before an alien can be excluded, the country to which he is being deported must consent to his admission. *Id.* at 257. In addition, the court in *Shung* noted that, as in the present case, the government represented that if the deportee is denied admission, the government will return him to the United States. *Id.*

Further, the court finds there is no support in the statute for the interpretation suggested by plaintiff. Under 8 U.S.C. § 1227(a), the INS is required to deport an excluded alien "to the country in which the alien boarded the vessel or aircraft on which he arrived in the United States . . .". In addition, 8 U.S.C. § 1227(a)(2) provides that the INS is accorded discretion in selecting a country of deportation where the country of return established by 8 U.S.C. § 1227(a)(1) "will not accept the alien into its territory." The statute is silent as to any prior consent requirement and the court finds there is absolutely no basis for a judicial extension of this statutory scheme to impose such a requirement on the government.

Finally, the court finds that there is no basis either in the decision of the Board of Immigration Appeals or in Walai's assertion that obtaining consent is standard policy of the INS, for inferring that the INS must obtain the consent of the government of Pakistan before deporting Walai. In this case, the government has provided a reasonable method for deporting the plaintiff, and has indicated several reasons why the intended manner of deportation is preferable and consistent with the statutory scheme. *See* Jasey Affidavit at ¶ 10.

Accordingly, the defendant's motion to dismiss this action is granted in all respects.

SO ORDERED.

---

1. Plaintiff estimates the cost of obtaining consent of the government of Pakistan to be approximately $50.00, and the cost of escorting Walai to Pakistan to be between $2,800.00 and $4,100.00. *See* Reply Memo at 3.