MATTER OF SHIRDEL, et al.

In Exclusion Proceedings

A–26166161
A–26166163
A–26166164
A–26166165

*Decided by Board February 21, 1984*

(1) Afghan nationals who arrived in the United States with fraudulent Turkish passports as transit without visa ("TRWOV") aliens in order to submit applications for asylum are excludable under the second clause of section 212(a)(19) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(19) (1982), for attempting to enter the United States by fraud or material misrepresentation.

(2) The use of fraudulent Turkish passports by Afghan nationals in order to avail themselves of the TRWOV privilege was an integral part of their material misrepresentation in attempting to enter the United States.

(3) Afghan nationals who came here from a foreign port in order to submit applications for asylum attempted an "entry" into the United States within the meaning of section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1982).

(4) An alien who circumvents the orderly procedures for obtaining refugee status abroad will be denied the discretionary relief of asylum in the absence of strong countervailing equities to overcome this serious adverse factor.

(5) Whether or not an applicant in exclusion proceedings is excludable under section 212(a)(19) of the Act is not determinative as to the issue of the discretionary relief of asylum. *Matter of Salim,* 18 I&N Dec. 311 (BIA 1982), clarified.

EXCLUDABLE: Act of 1952—Sec. 212(a)(19) [8 U.S.C. § 1182(a)(19)]—Procured visa by fraud or willful misrepresentation of a material fact

Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF APPLICANT:
Stephen M. Perlitsh, Esquire
Cohen & Tucker
1501 Broadway
New York, New York 10036

ON BEHALF OF SERVICE:
Guadalupe Gonzalez
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The applicants appeal from the May 17, 1983, decision of the immigration judge finding them excludable under section 212(a)(19) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(19) (1982), denying their application for asylum pursuant to section 208 of the Act, 8 U.S.C. § 1158 (1982), and granting them temporary withholding of deportation to Afghanistan pursuant to section 243(h) of the Act, 8 U.S.C. § 1253(h) (1982). The appeal will be dismissed.

The applicants' additional excludability under section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1982), for lack of a valid immigrant or nonimmigrant visa is not at issue and was conceded at the exclusion hearing. They are natives and citizens of Afghanistan who arrived in the United States without documentation and submitted applications for asylum and 243(h) relief. They contend that the immigration judge erred in denying their applications for asylum as a matter of discretion. They also contend that the immigration judge erred in finding them excludable under section 212(a)(19), merely because they arrived in the United States posing as transit without visa ("TRWOV") aliens using fraudulently obtained Turkish passports and airplane tickets issued in others' names. *See Matter of Salim*, 18 I&N Dec. 311 (BIA 1982). We disagree with both of the applicants' contentions.

The burden in exclusion proceedings is upon the applicant for admission to establish that he is not inadmissible under any provision of the Immigration and Nationality Act. *See* section 291 of the Act, 8 U.S.C. § 1361 (1982); *Matter of Ramirez-Rivero*, 18 I&N Dec. 135 (BIA 1981); *Matter of Doural*, 18 I&N Dec. 37 (BIA 1981); *Matter of Healy and Goodchild*, 17 I&N Dec. 22 (BIA 1979). Section 212(a)(19) renders excludable from admission—

[a]ny alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact.

The Attorney General has held that the first clause of section 212(a)(19), relating to documents, is both prospective and retrospective, but the second clause of the statute, relating to seeking entry into the United States, is prospective only. *Matter of M–*, 6 I&N Dec. 752 (BIA 1955); *Matter of M–*, 6 I&N Dec. 149 (BIA, A.G. 1954). Consequently, an alien whose fraud or material misrepresentations relate to the procurement of documents is forever barred from admission, unless he obtains a waiver.[1] On the other hand, a fraud or misrepresentation in connection with an entry not related to the

---

[1] *See* section 241(f)(1) of the Act, 8 U.S.C. § 1251(f)(1) (1982), as amended by section 8 of the Immigration and Nationality Act Amendments of 1981, Pub. L. No. 97–116, 95 Stat. 1611.

procurement of documents will invalidate only that entry and will not preclude a subsequent entry otherwise regular. We must examine the facts of this case for excludability under both clauses of the statute, since the immigration judge did not specify under which clause of section 212(a)(19) his finding was based.

The applicants contend that they are not excludable under section 212(a)(19) because they did not commit any fraud or willful misrepresentation to a United States official to cause the issuance of a visa or documentation. *See Matter of Kai Hing Hui*, 15 I&N Dec. 288 (BIA 1975); *Matter of Sarkissian*, 10 I&N Dec. 109 (BIA 1962); *Matter of Box*, 10 I&N Dec. 87 (BIA 1962); *Matter of L-L-*, 9 I&N Dec. 324 (BIA 1961). We closely scrutinize the factual basis for a possible finding of excludability under the first clause of section 212(a)(19) for fraud in the procurement of entry documents since such a finding perpetually bars an alien from admission. *Matter of Healy and Goodchild, supra; compare Matter of M-*, 6 I&N Dec. 752 (BIA 1955).

We conclude that a finding of excludability under the first clause of section 212(a)(19) of the Act cannot be sustained. The applicants' intentional misstatements to airline officials concerning their intent to proceed through the United States to Canada and their fraudulent use of Turkish passports procured to obtain passage to this country as TRWOV aliens were material misrepresentations within the meaning of section 212(a)(19) of the Act. *See Matter of S- and B-C-*, 9 I&N Dec. 436 (BIA 1960; A.G. 1961); *cf. Suite* v. *INS*, 594 F.2d 972 (3d Cir. 1979). Yet, their use of the passport and statements to airline officials were not made in connection with the procurement of a visa or their documentation and did not involve misrepresentation before officials of the United States Government. *See Matter of Kai Hing Hui, supra; Matter of Sarkissian, supra; Matter of Box, supra; Matter of L-L-, supra.* Similarly, there is no evidence that the applicants made material misrepresentations or committed fraud in connection with their applications for refugee status. *See United States* v. *Fedorenko*, 449 U.S. 490 (1981). Consequently, we find that the applicants are not excludable under the first clause of section 212(a)(19) of the Act as aliens who sought to procure or who have procured a visa or other documentation by fraud or by willful misrepresentation of a material fact.

However, we find the applicants excludable under the second clause of section 212(a)(19) for seeking to enter the United States by fraud or a material misrepresentation. *See Matter of M-*, 6 I&N Dec. 752 (BIA 1955); *Matter of M-*, 6 I&N Dec. 149 (BIA, A.G. 1954). Our decisions in *Matter of Box, supra; Matter of L-L-, supra; Matter of Sarkissian, supra;* and *Matter of Kai Hing Hui, supra,*

are inapplicable since they dealt with cases in which excludability was charged based on the procurement of documents by fraud or material misrepresentation. Such is not the case here, where the fraud was their flying to the United States posing as TRWOV aliens in order to submit applications for asylum. TRWOV aliens are admitted under agreements with the transportation lines, which guarantee their immediate and continuous passage to a foreign country, and do not encounter United States officials until they arrive at a port of entry. *See generally Matter of PAA "Flight 896/10"*, 8 I&N Dec. 498 (BIA 1959); 1 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 2.9a (rev. ed. 1982); 2 C. Gordon & H. Rosenfield, *supra,* at § 9.20c. Until May of 1979 neither immigration judges nor this Board addressed asylum claims in exclusion proceedings. *Matter of Salim, supra; Matter of Lam,* 18 I&N Dec. 15 (BIA 1981). Consequently, the question of what constitutes fraud or material misrepresentation in seeking to enter the United States as an applicant for asylum is an issue of first impression before this Board.[2]

In *United States* v. *Kavazanjian,* 623 F.2d 730 (1st Cir. 1980), the court held that if an alien adopts the TRWOV device solely for the purpose of reaching the United States and submitting an asylum application without any intention of pursuing the remainder of the journey, it constitutes a fraud on the United States. The TRWOV device is designed to facilitate international travel by permitting aliens travelling between foreign countries to make a stopover in the United States without presenting a passport or visa. *See* section 212(d)(4)(C), 8 U.S.C. § 1182(d)(4)(C) (1982). To avail himself of the TRWOV privilege an alien must establish that he is admissible under the immigration laws; that he has confirmed and onward reservations to at least the next country beyond the United States; and that he will continue his journey and depart this country within 8 hours after his arrival or on the next available transport. *See* 8 C.F.R. § 214.2(c) (1984); 22 C.F.R. § 41.30 (1984).

Pursuant to section 101(a)(15)(C) of the Act, 8 U.S.C. § 1101(a)(15)(C) (1982), and 8 C.F.R. § 212.1(e) (1984), TRWOV aliens are exempt from the passport and visa requirements if they are in possession of travel documents establishing their identity, nationality, and ability to enter some other country. However, 8 C.F.R. § 212.1(e)(3) (1984) specifies that the TRWOV privilege is unavailable to citizens or nationals of Afghanistan, Cuba, Iraq, or Iran. The basis for that restriction imposed on Afghans is their abuse of

---

[2] We did not need to address this question in *Salim* because excludability under section 212(a)(19) was conceded at the exclusion hearing.

the TRWOV device in order to submit applications for asylum as refugees. *See* 47 Fed. Reg. 5990, 8005 (1982). It is clear that the applicants committed fraud upon the United States in order to arrive in this country by posing as Turkish citizens.

The applicants clearly intended to enter the United States. This was their ultimate goal. They chose not to wait abroad for a refugee visa. Instead, their first step for eventually entering this country as refugees was to apply for asylum when they arrived in the United States on February 5, 1983. They needed to be physically present in this country in order to submit such an application. Yet, they could not fly here legally because they did not have visas and were precluded from obtaining TRWOV status as Afghan nationals. They avoided the 8 C.F.R. § 212.1(e)(3) (1983) restriction on TRWOV status for Afghans by fraud. The four Turkish passports they fraudulently purchased for $8,000 included airline tickets issued to the same names listed in the passports.[3] Turkish nationals are not precluded from obtaining TRWOV status pursuant to 8 C.F.R. § 212.1(e)(3) (1983). Posing as Turkish nationals the applicants were able to apply for asylum in New York, circumventing the orderly procedures for applying for refugee status abroad.

Section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1982), states, in part, that "[t]he term 'entry' means any coming of an alien into the United States from a foreign port or place. . . ." The applicants came here from such a foreign port in order to submit an application for asylum. Consequently, the immigration judge properly found the applicants excludable under section 212(a)(19) for attempting to enter the United States by fraud. The fraud was an integral step in their scheme to eventually enter as refugees.[4]

We also agree with the immigration judge's denial of their application for asylum as a matter of discretion, even though he found that they had a well-founded fear of persecution in their native Af-

---

[3] Only the sons' passports and airline tickets were made part of the record since the father's passport included his wife and daughter who proceeded to Colorado without being detained. The father had a similar Turkish passport and airline ticket.

[4] The dictum in *United States* v. *Kavazanjian, supra,* at 738, states that a TRWOV is not attempting to enter because he is precluded from adjustment of status by section 245(c)(3) of the Act, 8 U.S.C. § 1255(c)(3) (1982), and therefore, his status is similar to that of a parolee. However, section 209 of the Act, 8 U.S.C. § 1159 (1982), is the applicable adjustment provision for asylees, not section 245. Section 245(c)(3) is applicable only to adjustment applications pursuant to section 245. Moreover, unlike a parolee, an asylee is not subject to certain grounds of excludability and has available more waivers of excludability than a mere parolee. *See* section 209(c) of the Act. Pursuant to section 101(a)(13) of the Act, any coming from abroad, with limited exceptions, constitutes an "entry."

37

ghanistan for purposes of 243(h) relief. The applicants erroneously contend that the immigration judge's discretionary denial was an abuse of discretion. They also erroneously assume that the finding of excludability under section 212(a)(19) is determinative in their case. Even if they had not been found excludable under that section, it does not follow that asylum would have been granted.

An asylum applicant seeks the favorable exercise of discretion. Consequently, as with all such discretionary applications, an applicant has the burden to establish that the favorable exercise of discretion is warranted. *Matter of Salim, supra; Matter of Seda,* 17 I&N Dec. 550 (BIA 1980); *Matter of Salmon,* 16 I&N Dec. 734 (BIA 1978); *Matter of Rojas,* 15 I&N Dec. 492 (BIA 1975); *Matter of Arai,* 13 I&N Dec. 494 (BIA 1970). The critical factor for denying the applications for asylum is that by using fraudulent passports they improperly bypassed the orderly procedures prescribed for obtaining refugee status abroad. The record reflects that the applicants were sold the airplane tickets and documents which they used to board an airplane bound for the United States by an organized ring of smugglers. We have in the past considered it a strong negative factor to enter the United States with the aid of a professional smuggler because of the threat it presents to the enforcement of our immigration laws. *Matter of Rojas, supra.*

The number of Afghan refugees admitted into the United States must fall within the ceiling of 5,000 allocated by the President to Middle East refugees. Therefore, the State Department, Bureau of Human Rights and Humanitarian Affairs, recommended in its advisory letter that the asylum applications be denied for policy considerations since the applicants misused our immigration laws to gain an advantage over all other similarly situated Afghan refugees who are following the established procedures for legally immigrating to the United States.

We have weighed all the equities and conclude that the applications for asylum were properly denied in the exercise of discretion. *Walai v. INS,* 552 F. Supp. 998 (S.D.N.Y. 1982); *Matter of Salim, supra.* To grant asylum to someone who reaches our shores aided by a ring of smugglers, after he had already escaped from the country where he reasonably feared persecution, would only encourage others to likewise bypass the orderly procedures prescribed for immigrating as a refugee. The applicants should not be placed ahead of all the other similarly situated Afghan refugees. Their only relatives in this country are other applicants for asylum. Their contention that being denied asylum could result in an unjust result because the mother and daughter are not in detention and are also applicants for asylum is illogical. If the mother and daughter

obtain asylum on their own in their separate applications, then the applicants could still receive derivative refugee status pursuant to 8 C.F.R. § 207.1(e) (1984), and subsequent adjustment of status pursuant to 8 C.F.R. § 209.2(a)(3) (1984). Consequently, the applicants would not be unduly prejudiced by their asylum application having been denied.[5]

Finally, the applicants erroneously contend that they cannot be deported to Pakistan unless Pakistan agrees to their resettlement there. *See Walai v. INS, supra.* Under section 7 of the Immigration and Nationality Act Amendments of 1981, Pub. L. No. 97–116, 95 Stat. 1611, the applicants can ultimately be deported to any country which will accept them. *See Walai v. INS, supra; Matter of Salim, supra,* n.1.

**ORDER:** The appeal is dismissed.

---

[5] Since their excludability derives from the second clause of section 212(a)(19), it would not preclude a subsequent entry otherwise regular in an adjustment application as derivative refugees. *See Matter of M–,* 6 I&N Dec. 752 (BIA 1955); *Matter of M–,* 6 I&N Dec. 149 (BIA, A.G. 1954); *see also supra* note 4.