## MATTER OF GHARADAGHI

### In Exclusion Proceedings

### A-23299833

*Decided by Board November 1, 1985*

(1) An alien who circumvents the orderly procedures for obtaining refugee status abroad may be granted asylum as a matter of discretion if he establishes sufficient countervailing equities.

(2) Generally, it will be necessary to balance the positive and negative factors in each case where an alien's circumvention of the orderly refugee procedures does not involve a finding of fraud under section 212(a)(19) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(19) (1982). *Matter of Shirdel,* 19 I&N Dec. 33 (BIA 1984); and *Matter of Salim,* 18 I&N Dec. 311 (BIA 1982), clarified.

EXCLUDABLE: Act of 1952—Sec. 212(a)(19) [8 U.S.C. § 1182(a)(19)]—Seeks to enter by fraud or willful misrepresentation of a material fact

Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF APPLICANT:
Kenneth A. Cohen, Esquire
Goldome Bank Building
880 Military Road
Niagara Falls, New York 14304-0198

ON BEHALF OF SERVICE:
David Dixon
Appellate Counsel

Michael Rocco
General Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated November 6, 1984, the immigration judge found the applicant excludable under section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(20) (1982); denied his application for asylum under section 208 of the Act, 8 U.S.C. § 1158 (1982), in the exercise of discretion; declined to rule on his application for withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1982); and ordered that he be excluded and deported from the United States. The applicant has appealed from the discretionary denial of asylum. The appeal will be dis-

missed. The immigration judge's decision will be modified so as to grant the application for withholding of deportation to Iran.

The applicant, a 24-year-old single male Armenian Christian, is a native and citizen of Iran. He sought admission to the United States on July 27, 1984, but did not appear to be clearly admissible. At his hearing, the applicant conceded excludability under section 212(a)(20) of the Act. He also requested asylum and was found to have established a well-founded fear of persecution. The immigration judge found that the applicant was not excludable under section 212(a)(19) of the Act. The Service has not appealed this finding. The applicant's excludability under section 212(a)(20) of the Act and well-founded fear of persecution are not at issue.

In early 1980, the applicant's mother, brother, and sister left Iran, accompanied by the applicant's father, and entered Spain. Later that year, the applicant's mother, brother, and sister were admitted to the United States, apparently as visitors for medical purposes. Meanwhile, the applicant's father returned to Iran in an attempt to assist the applicant to leave Iran. This attempt was unsuccessful, although the applicant's father was able to leave Iran. From Iran, the applicant's father went to Turkey and then to Barcelona, Spain. The applicant's father testified that, approximately 1 month after he had gone to the American consulate in Barcelona and advised officials of his family in the United States, he was given a visa. On December 31, 1981, the applicant's father was indefinitely paroled into the United States.

On October 27, 1983, the applicant, without any travel documents, was able to escape from his native country and enter Pakistan. The applicant testified that, when he left Iran, he intended to come to the United States because his family, which includes a lawful permanent resident uncle, was here. He alleged that he did not apply for asylum in Pakistan because he did not want to remain there. The applicant stated that, after 2 months in Pakistan, he registered with the United Nations as a refugee in order to obtain a document for security purposes and in order to find out the procedure to come to the United States. The applicant admitted that, because he wanted to come directly to the United States, he was refused a travel document by the United Nations. The applicant testified that the United Nations told him they could not send him directly to the United States but might be able to send him to a country in Europe, such as Austria or Italy, where he could do something to come to the United States. The applicant indicated that he did not know how long it would take a refugee to reach the United States from Europe. During this time, the applicant's family obtained legal assistance to facilitate the applicant's admis-

sion to the United States. A Request for Asylum in the United States (Form I-589) was submitted to the United States consulate in Pakistan but, apparently, was returned on the grounds that the consulate did not process refugee applications and would not issue a visa to an alien without a passport. Subsequently, the applicant stated he heard rumors that Pakistan was going to extradite Armenian refugees to Iran. He purchased a Portuguese passport, departed from Pakistan in May 1984, 7 months after his entry, and flew to Canada with stopovers in Milan and Rome, Italy. He stayed 1 and ½ hours in Milan to refuel and 4 hours in Rome, where he changed planes. He stated that he did not seek refugee status in Rome because he knew Iranians, in particular, a cousin, who had made similar requests but had been denied relief. The applicant also stated that he destroyed his passport en route.

The applicant arrived in Canada in May 1984 and applied for refugee status. He stated that he was given $140 per month sustenance from the Canadian Government. He further stated that he decided to leave Canada because he was uncertain as to the length of time it would take to adjudicate his application and because his Canadian attorney advised that, although he would be able to visit, he would be unable to live permanently with his family in the United States. Prior to adjudication of his Canadian application, and on the date scheduled for his hearing, i.e., July 27, 1984, the applicant sought admission to the United States. The record indicates that the applicant was a passenger riding in the front seat of an automobile driven by an American Indian. The applicant stated that he had known this man approximately 1 week, had met with him three times, and had paid him $500 to go to New York City. He further stated that he intended to travel from New York to his family's home. The applicant advised that, when initially stopped by immigration officials at the Canadian-United States border, he gave a name the Indian had instructed him to use. The applicant further advised that he provided his true identity when taken to another room by immigration officials.

Except for specified purposes, the applicant has not been permitted physically to enter the United States. He remains in Canada.

The immigration judge found that the applicant did not warrant a discretionary grant of asylum in view of his deliberate avoidance of obtaining proper refugee status in Pakistan and in Rome, Italy, and of his deliberate avoidance of the assistance of the Canadian Government.

On appeal, the applicant argues that he merits a favorable exercise of discretion. He contends that, as the absence of a finding of fraud under section 212(a)(19) of the Act is decisive, his case is dis-

tinguishable from *Matter of Salim*, 18 I&N Dec. 311 (BIA 1982). The applicant also points out that he did not fraudulently enter Canada. He emphasizes that his immediate family is in the United States, that his father could offer him employment, and that he has been separated from his family for at least 4 years.

The Service argues that *Matter of Salim, supra*, is not totally based on a fraudulent entry into the United States, but on the fraudulent avoidance of refugee procedures.

In *Matter of Salim, supra*, asylum under section 208 of the Act was denied as a matter of discretion because the alien was excludable under section 212(a)(19) of the Act and because the alien attempted to circumvent the orderly procedures provided for refugees to immigrate lawfully. The fraudulent avoidance of orderly refugee procedures was found to be an extremely adverse factor, which could only be overcome with the most unusual showing of countervailing equities.

In *Matter of Shirdel*, 19 I&N Dec. 33 (BIA 1984), asylum was denied as a matter of discretion to aliens who were excludable under section 212(a)(19) of the Act, for seeking to enter by fraud, and who had circumvented the orderly procedures for obtaining refugee status abroad. In denying asylum, we pointed out that a finding of excludability under section 212(a)(19) was not determinative. The critical factor was that, by using fraudulent passports, the aliens improperly bypassed the orderly procedures prescribed for obtaining refugee status abroad. We concluded that the aliens in those proceedings, whose only relatives in this country were other asylum applicants who had arrived at the same time, had not presented sufficient countervailing equities to merit discretionary relief. *See Sarkis v. Sava*, 599 F. Supp. 724 (E.D.N.Y. 1984); *Walai v. INS*, 552 F. Supp. 998 (S.D.N.Y. 1982).

An alien who circumvents the orderly procedures for obtaining refugee status is not precluded from obtaining a discretionary grant of asylum. However, as noted in *Shirdel* and *Salim, supra*, the alien must establish that he has sufficient countervailing equities to warrant the favorable exercise of discretion. Generally, it will be necessary to balance the positive and negative factors in each case, particularly where a finding of fraud is not involved.

The applicant has not established that his asylum application should be granted as a matter of discretion. On the record before us, we conclude that the applicant has circumvented the orderly procedures established for refugees to immigrate lawfully to the United States. Rather than fleeing persecution, per se, the applicant's overriding purpose in seeking admission to this country is reunification with his immediate family. The applicant's first safe

haven was Pakistan where he remained approximately 7 months. While in Pakistan, the applicant initially applied for refugee status with the United Nations. He was refused a travel document, however, not because he failed to qualify, but because he did not want to comply with the United Nations procedure by which refugees are sent directly to Europe, not to the United States. Further, after his unsuccessful attempt to obtain refugee status from the United States consulate in Pakistan, the applicant purchased a fraudulent passport on which he traveled to Canada via Rome. We have considered the applicant's claim that, when he was in Pakistan, he was fearful of being extradited to Iran but, under the circumstances before us, do not find it to be persuasive. The applicant was in Rome approximately 4 hours, had changed planes, and, through the advice of a cousin as well as the United Nations, was aware that he could seek refugee status from the United States Government in that city. The applicant did not apply for such status, however, apparently because his cousin's claim had been rejected. The applicant has made no allegation that he fears or would be subject to persecution in Italy. The applicant continued his journey to Canada where he was given financial assistance from the Canadian Government. He also was given a hearing regarding his application for refugee status but failed to attend because he did not want to wait for an adjudication which could take months and because he wanted to be reunited with his immediate family. The applicant has made no allegation that he fears or would be subject to persecution in Canada.

We recognize that the applicant did not attempt to use his Portuguese passport to procure a visa from the United States by fraud. Similarly, the applicant did not attempt to enter the United States with a fraudulent visa or passport; nor did he attempt to enter Canada with a fraudulent visa or passport. Nevertheless, the finding of a lack of fraud pursuant to section 212(a)(19) of the Act, while not a negative factor, cannot, in these circumstances, be considered to be a positive factor. It should be pointed out that, on the basis of a fraudulent passport, not only was the applicant able to travel to Canada, but he also was ultimately able to obtain physical presence in that country. Through this mechanism, he also was able to arrive at our border. Further, in order to obtain admission into the United States, the applicant initially provided a false name and used a smuggler.

We are sympathetic with the circumstances surrounding the applicant's separation from his parents, sister, and brother and with the applicant's desire to be reunited with them. We note that the applicant has not seen his mother, sister, and brother since he was

19, more than 5 years ago. With the exception of approximately 1 hour after his hearing, the applicant has not seen his father since he was 20, more than 4 years ago. Specifically, the applicant has not seen his father since the unsuccessful attempt to get the applicant out of Iran and reunited with his immediate family. Further, the applicant's father has resided in the United States since December 31, 1981, while the applicant's mother, brother, and sister have resided in the United States since 1980. Notwithstanding the presence of family members in the United States, including a lawful permanent resident uncle, however, none of the applicant's immediate family has been accorded status as a United States citizen or lawful permanent resident. It appears that each member of the applicant's immediate family is an asylum applicant.

Considering all of the circumstances in these proceedings, including the physical presence of immediate family members in the United States whose asylum applications are as yet unadjudicated, as well as the applicant's deliberate avoidance of prescribed refugee procedures, we are unable to conclude that the applicant has established sufficient equities to outweigh the negative factors in the record.

One additional matter must be addressed. In view of the applicant's physical presence in Canada, the immigration judge found that it was unnecessary to adjudicate the application for withholding of deportation. We do not agree.

The fact that the applicant in these proceedings is physically outside the United States is not determinative. Legally, all aliens in exclusion proceedings are considered to be physically outside this country. *See generally Landon v. Plasencia*, 459 U.S. 21 (1982). Under the regulations, asylum requests *shall* also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act. 8 C.F.R. § 208.3(b) (1985). This provision is mandatory. It does not permit the immigration judge or the Board to ignore an application for withholding of deportation properly filed on Form I-589. *See generally Matter of Dea*, 18 I&N Dec. 269 (BIA 1982). Further, the application may be made either in exclusion or in deportation proceedings. *See* 8 C.F.R. §§ 208.3(b), 208.9, 208.10, 208.11 (1985). The record reflects that the applicant has properly filed a request for asylum and, concomitantly, a request for withholding of deportation, on Form I-589.

We have held that the well-founded-fear standard for asylum and the clear-probability standard for withholding of deportation are not meaningfully different and, in practical application, converge. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985); *see Sankar v. INS*, 757 F.2d 532 (3d Cir. 1985); *Rejaie v. INS*, 691 F.2d 139 (3d Cir.

1982); *Matter of Salim, supra; see also Matter of Lam,* 18 I&N Dec. 15 (BIA 1981). *But see Cardoza-Fonseca v. INS,* 767 F.2d 1448 (9th Cir. 1985); *Bolanos-Hernandez v. INS,* 767 F.2d 1277 (9th Cir. 1984) (well-founded-fear standard more generous than the clear-probability standard); *Matter of Sanchez and Escobar,* 19 I&N Dec. 276 (BIA 1985) (adopting the *Cardoza-Fonseca* standard in cases within the jurisdiction of the United States Court of Appeals for the Ninth Circuit). The applicant has established a well-founded fear of persecution. On the record before us, we conclude that the applicant similarly has established that his life or freedom will be threatened for one or more of the grounds specified in the Act. We further conclude that his application for withholding of deportation to Iran must be granted.

Accordingly, the appeal will be dismissed. However, the applicant's application for withholding of deportation to Iran will be granted.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** The applicant's deportation to Iran is temporarily withheld as provided by section 243(h) of the Act.

317