# In re B-, Applicant

*Decided May 19, 1995*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Under the circumstances of this case, where an asylum applicant's testimony was plausible, detailed, internally consistent, consistent with the asylum application, and unembellished during the applicant's repeated relating of events in a probing cross-examination, the Board declines to adopt the Immigration Judge's adverse credibility finding.

FOR APPLICANT: Cheryl L. Baratta, Esquire, Somerville, New Jersey

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Charles Parker, Jr., District Counsel

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HEILMAN, Board Member; HOLMES, Alternate Board Member. Dissenting Opinion: VACCA, Board Member.

HEILMAN, Board Member:

In a decision dated July 8, 1991, the Immigration Judge found the applicant excludable under section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(20) (1988),[1] denied his applications for asylum and withholding of deportation under sections 208(a) of the Act, 8 U.S.C. § 1158(a) (1988), and 243(h) of the Act, 8 U.S.C. § 1253(h) (1988 & Supp. III 1991), and ordered him excluded and deported from the United States. The applicant has appealed only from the denial of asylum and withholding of deportation. The appeal will be sustained. The request for oral argument before the Board is denied.

## I. THE FACTS

The applicant is a 40-year-old married, male native and citizen of Afghanistan. He testified that he used to live with his family in Kandahar where he worked in his father's textile store. He advised that he and his father began helping the mujahidin in 1981. The applicant indicated that his father donated

---

[1] Revised and redesignated as section 212(a)(7)(A)(i)(I) of the Act by section 601 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5074 (effective Nov. 29, 1990).

food and medicine while he helped the mujahidin by posting up mujahidin fliers two to five times a month. He stated that his older brother had been an actual member of the mujahidin since 1981 and was serving as a driver, transporting weapons and the wounded. He indicated that his brother lived with the mujahidin on the outskirts of Kandahar but would come home for a visit after dark once a month.

The applicant related that in October 1988 his brother came home for one of his brief visits. According to the applicant, someone must have reported his brother's presence to the authorities because the following morning agents from KHAD, the Afghan secret police, came to his house looking for his brother after he had already departed. The applicant said that the agents immediately handcuffed him and his father and then searched the house. He stated that during the search they found a supply of mujahidin fliers under his father's mattress which the applicant had not yet been able to distribute. He indicated that the agents then beat him and his father with the butts of their guns and asked where the applicant's brother was. The applicant advised that he and his father were blindfolded and taken to a KHAD building.

The applicant further testified that he and his father were separated once they arrived at KHAD, and he did not know what ultimately happened to his father. He said that he himself was subjected to interrogation sessions. He indicated that the first session began with nonviolent questioning about who gave him the mujahidin fliers, where his brother was, and where the mujahidin who supplied the fliers were. The applicant testified that he responded that he did not know, but his interrogators insisted that he did know about the mujahidin because he was helping them. He stated that the KHAD agents thereafter subjected him to sleep deprivation, beatings, and electric shocks applied to his fingers. He said that he was often rendered unconscious by the abuse and would wake up back in his cell. According to the applicant, the interrogations occurred once or twice a week.

The applicant stated that after 3 months at KHAD, he was transferred to a prison. He advised that at the prison he was no longer interrogated. He stated that he was kept locked in a cell with two other people and was allowed out of his cell only once a day for a meal. The applicant related that after he had been in prison for 10 months he was sent involuntarily to the army. He stated that he deserted after 4 months in the army because he did not want to fight against other Moslems.

The applicant further indicated that after leaving the army he went to Pakistan with the help of the mujahidin. He explained that he did not stay in Afghanistan because his life was in danger there and he would not have been of any help to his wife and family. He stated that one of his father's friends who was in Pakistan provided the money which he used to travel to the United States 3 months after arriving in Pakistan. The applicant said that he had a cousin and a brother-in-law in the United States. His Request for Asylum in the United States (Form I-589) reflects that this brother-in-law is a

conditional resident. He testified that he resided with his brother-in-law when he first arrived in the United States.

## II. THE IMMIGRATION JUDGE'S DECISION

The Immigration Judge found that the applicant had failed to establish his eligibility for asylum and withholding of deportation. He stated that the applicant's account of events might warrant a grant of asylum if his testimony could be accepted as true. He further said, however, that he had "a great deal of trouble" accepting the applicant's story as being candid, forthright, and completely truthful. In this regard, the Immigration Judge noted that even after he asked the applicant to look at him while he testified, the applicant instead looked down at the table or looked past the interpreter to the wall. The Immigration Judge also observed that the applicant said he could not remember dates but he did not submit any medical evidence to show that his memory may have been affected by his treatment at the hands of government security forces.

The Immigration Judge further stated that the applicant's story as a whole left "some question" in his mind. He wondered why the applicant had to leave Afghanistan when his brother who was a full-fledged member of the mujahidin could remain behind. He also observed that the applicant "seemed to dismiss the situation of his wife and children who were left behind in Afghanistan." Finally, the Immigration Judge faulted the applicant for not corroborating his story because there were people in the New York metropolitan area from Afghanistan who "might have been familiar with the political situation there, including any assistance that one might have given to the so-called freedom fighters."

## III. THE CONTENTIONS ON APPEAL

On appeal, the applicant claims that he demonstrated both past persecution and a well-founded fear of future persecution. He also argues that the Immigration Judge's comments about his testimony did not rise to the level of an actual adverse credibility finding but that even if they did, such a finding is not supported by the record. He contends that the Immigration Judge was unable to point to any aspect of his demeanor other than his failure to look at him while testifying. In this regard, the applicant asserts that he was seated in the courtroom in such a way that it would have been unnatural for him to have looked at the Immigration Judge while answering questions. He explains that the wall to which the Immigration Judge referred was directly behind the interpreter, and that it was therefore neither surprising nor indicative of deception for him to have turned in the direction of the interpreter when answering questions rather than towards the Immigration Judge, who was not involved in the questioning.

The applicant further maintains that the Immigration Judge's observation that he said he could not remember dates was incorrect and that he never made such a statement. He argues that in fact he did remember dates, although not as specifically as the Immigration Judge would have preferred. He recounts each of the events for which he was asked to provide a date and points out that there were no instances in which he totally failed to remember a date.

The Immigration and Naturalization Service indicates on appeal that it adopts the decision of the Immigration Judge. It is asserted that the decision correctly sets out the facts and the applicable law involved.

## IV.  THE LAW

The applicant bears the evidentiary burdens of proof and persuasion in any application for withholding of deportation under section 243(h) or asylum under section 208 of the Act. *Matter of Acosta,* 19 I&N Dec. 211 (BIA 1985), *overruled on other grounds, Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987); 8 C.F.R. §§ 208.13, 236.3(c)(3) (1995).

To be eligible for withholding of deportation pursuant to section 243(h) of the Act, an alien's facts must show a clear probability of persecution in the country designated for deportation, on account of race, religion, nationality, membership in a particular social group, or political opinion.  *INS v. Stevic,* 467 U.S. 407 (1984).  This means that the alien's facts must establish that it is more likely than not he would be subject to persecution for one of the grounds specified. *Id*.

To be eligible for asylum under section 208 of the Act, an alien must meet the definition of a "refugee," which requires him to show persecution or a well-founded fear of persecution in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion.  Sections 101(a)(42)(A), 208(a) of the Act, 8 U.S.C. §§ 1101(a)(42)(A), 1158(a) (1988).  The burden of proof required to establish eligibility for asylum is lower than that required for withholding of deportation. *INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987).  An applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution for one of the five grounds specified in the Act. *Matter of Mogharrabi, supra.*

An applicant for asylum under section 208 of the Act may establish his claim by presenting evidence of past persecution in lieu of evidence of a well-founded fear of persecution. *See Matter of Chen*, 20 I&N Dec. 16 (BIA 1989); 8 C.F.R. § 208.13(b) (1995). An application for asylum shall be denied, however, if the applicant establishes past persecution but is determined not to have a well-founded fear of future persecution, unless it is determined that the applicant has demonstrated compelling reasons arising out of

the severity of the past persecution for being unwilling to return to his country of nationality. *See* 8 C.F.R. § 208.13(b)(1) (1995).

## V. THE APPLICANT'S CREDIBILITY

The Immigration Judge determined that the applicant's testimony lacked credibility. After carefully reviewing the record, we conclude that there is an inadequate basis for finding the applicant's testimony incredible. The primary problem with the applicant's testimony discussed by the Immigration Judge involved an aspect of the applicant's demeanor, his tendency during his testimony to look down at the table or at the wall behind the interpreter instead of at the Immigration Judge. Although, of course, we have not been able to observe this behavior by the applicant, we do not find that it necessarily indicates deception. Instead, it may indicate the applicant's concentration on the questions being asked of him through the interpreter. We note that the applicant seems to have been listening carefully, as the transcript contains about half a dozen instances where the applicant requested clarification of a question before he answered. These requests for clarification appear to have been conscientious attempts to provide the information sought by the questioner rather than attempts to evade answering.

Moreover, when we view the demeanor problem within the context of the whole record before us, we are impressed with the indications of the applicant's truthfulness. The applicant's testimony was consistent throughout, even though he was subjected to a probing cross-examination which, as measured by pages in the transcript, was over twice as long as the direct examination. This testimony, in turn, was entirely consistent with the applicant's detailed Request for Asylum in the United States (Form I-589), submitted 3 months before the hearing. It is also significant that the applicant's story was not embellished during his repeated relating of events.

In addition, we agree with the applicant's assertion on appeal that although his recollection of precise dates was faulty, he always provided at least an approximate date when a date was requested of him. It is not altogether surprising that the applicant would have been disoriented about precise dates when he had spent so much of the time in question in confinement and had left Afghanistan directly from the army without returning home to discuss events with his family. We do not consider the failure to provide precise dates to be an indication of deception in this case.

Furthermore, we do not share the Immigration Judge's questions about the applicant's having left Afghanistan when his wife and children remained behind and his brother, a full-fledged mujahidin member, was managing to live there. Because the applicant had escaped from the army, he could not have resumed his residence with his family in Afghanistan without being quickly arrested for desertion. We therefore find his story of immediately departing from Afghanistan after his desertion to be completely plausible

under the circumstances. While remaining in Afghanistan by joining the mujahidin and living with them was presumably an option available to him, we do not find his account of events inherently incredible simply because it reflects that he chose a different course of action.

The only remaining basis relied on by the Immigration Judge to question the applicant's credibility was his failure to corroborate his testimony by presenting as witnesses some of the Afghans living in the New York metropolitan area who could testify to the political situation in Afghanistan, including any assistance that one might have given to the mujahidin. Corroborating evidence, however, is not necessary if an alien's own testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear of persecution. *See Matter of Mogharrabi, supra; see also* 8 C.F.R § 208.13(a) (1995). The applicant's testimony was detailed and remarkably consistent in this case. Moreover, any testimony which might have been presented by other Afghans in New York about the political situation in Afghanistan and ways of helping the mujahidin would likely have been too general to corroborate the specific facts of the applicant's persecution claim. Thus, for the foregoing reasons, we decline to accept the Immigration Judge's adverse credibility finding and have not relied on it in reaching our decision in this case.

## VI. DISCUSSION AS TO ELIGIBILITY FOR ASYLUM

We find that the applicant has established his eligibility for asylum by showing that he was subjected to past persecution in Afghanistan. The record indicates that the applicant was arrested in 1988 not only to obtain information from him about his brother, who was a mujahidin member, but also because the discovery of mujahidin fliers in his house led authorities to suspect that the applicant and his father were involved with the mujahidin too. During his interrogation by KHAD, the applicant was accused of helping the mujahidin and was questioned about the identity and whereabouts of the mujahidin members who supplied the fliers. After 3 months of interrogation and physical abuse at KHAD, he was transferred to a prison, where he remained for 10 more months before being sent to serve in the army. The applicant's detention and imprisonment for his support of the mujahidin constituted persecution on account of political opinion. *See Matter of Izatula*, 20 I&N Dec. 149 (BIA 1990).

Political conditions in Afghanistan have changed since the applicant's hearing, however. We take administrative notice[2] of the fact that in April 1992, following some 14 years of civil war, the mujahidin guerrilla forces finally deposed the Communist government in Afghanistan and set up an

---

[2] *See Matter of R-R-*, 20 I&N Dec. 547, at 551 n. 3 (BIA 1992) (concerning administrative notice).

interim government of their own.[3] We also note that subsequent infighting among the victorious factions has led to periods of civil unrest.[4] As the applicant's stated claim relates solely to a threat from the Communists, under the present circumstances we do not find that the record now before us supports a determination that he has a well-founded fear of persecution were he to return to Afghanistan.

We further find, however, that the past persecution suffered by the applicant was so severe that his asylum application should be granted notwithstanding the change of circumstances. The applicant spent 13 months in KHAD detention and in prison under the Communist regime. Prison conditions in Afghanistan during that time were deplorable, involving the routine use of various forms of physical torture and psychological abuse, inadequate diet and medical care, and the integration of political prisoners with criminal and mentally ill prisoners. *See Matter of Izatula, supra* at 153. Moreover, the applicant's experiences during his detention and imprisonment must have been exacerbated by his ignorance of his father's fate and his separation from the rest of his family. Therefore, given the persecution which the applicant suffered for such a long period, and the current civil strife in Afghanistan, we conclude that the applicant warrants a grant of asylum.

Because of our disposition of this case, we need not consider the applicant's application for relief under section 243(h) of the Act. *See Matter of Mogharrabi, supra.*

Accordingly, the appeal will be sustained and the application for asylum will be granted.

**ORDER:** The appeal is sustained and the decision of the Immigration Judge denying the application for asylum is reversed.

**FURTHER ORDER:** The applicant is granted asylum pursuant to section 208 of the Immigration and Nationality Act, as amended, and the exclusion proceedings are terminated.

*DISSENTING OPINION:* Fred W. Vacca, Board Member

I respectfully dissent.

The Immigration Judge found the applicant excludable under section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(20) (1988). The applicant applied for asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a) (1988), and withholding of deportation under section

---

[3] *See* Committees on Foreign Relations and Foreign Affairs, 103d Cong., 1st Sess., *Country Reports on Human Rights Practices for 1992* 1115 (Joint Comm. Print 1993).

[4] *See, e.g.,* John Ward Anderson, *Afghan Militia's Rise Pushes U.N. Peace Effort Near Collapse,* Washington Post, Feb. 21, 1995, at A10; John Ward Anderson, *New Fighting Dashes Hopes of Peace in Afghanistan,* Washington Post, Aug. 30, 1994, at A16; Molly Moore, *A Long March From Kabul; Thousands of Afghans Flee a City Under Siege*, Washington Post, Mar. 4, 1994, at A1.

243(h) of the Act, 8 U.S.C. § 1253(h) (1988 & Supp. III 1991). The Immigration Judge denied his applications. The applicant appealed. In its decision, the majority of the members of the Board of Immigration Appeals sustains the appeal, reverses the decision of the Immigration Judge, and grants the application for asylum based on past persecution alone. The majority expressly finds that the applicant has failed to demonstrate a well-founded fear of persecution. The majority does not address the issue of whether the applicant is statutorily eligible for the relief of withholding of deportation. However, the majority presumably would agree that because the applicant has not established the lower standard of a well-founded fear of persecution, he has also failed to meet the higher standard of a clear probability of persecution required for withholding of deportation. I will therefore limit my comments to whether the applicant has established his eligibility for asylum based on past persecution. I believe the applicant has not met his burden of establishing statutory eligibility for asylum based on past persecution and, therefore, would dismiss the appeal.

The applicant is a 40-year-old married, male native and citizen of Afghanistan. He testified that his brother was a member of the mujahidin who had been living for 10 years with a mujahidin group near Kandahar. He said that he and his father helped his brother's mujahidin group by donating food and medicine and posting mujahidin fliers. According to the applicant, he and his father were arrested by KHAD, the Afghan secret police, in October 1988, after KHAD agents looking for his brother in their house discovered a supply of mujahidin fliers under his father's mattress. The applicant advised that he did not know what happened to his father after they were both taken to KHAD, but he related that he was held at KHAD for 3 months, where he was physically abused and interrogated about his brother and his own suspected mujahidin involvement. He stated that he was then transferred to a prison for another 10 months and thereafter sent involuntarily to serve in the Afghan army.

In addition, the applicant testified that after 4 months in the army he deserted with the cooperation of a security guard who escaped with him. He asserted that he did not stay in the army because he did not want to fight against his Moslem brothers in the mujahidin. He said that after his desertion, he went directly to Pakistan without first going home. The applicant related that he left Afghanistan because of his problems with KHAD and because he had deserted from the army. When asked if he was concerned about his wife and children when he left Afghanistan, he testified that he had seen danger for himself and could not have helped them because he had nothing to help them with. He also acknowledged that his brother had been able to remain in Afghanistan because he was living with the mujahidin. The applicant stated that he did not join the mujahidin himself because he "was not strong enough." He explained that he did not have the power in him to remain and kill others or be killed himself.

In order to establish eligibility for a grant of asylum, an alien must demonstrate that he is a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1988). *See* section 208 of the Act, 8 U.S.C. § 1158 (1988). That definition includes the requirement that an alien demonstrate that he is unwilling or unable to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). The applicant must also establish that he merits such relief as a matter of discretion. *Matter of Pula*, 19 I&N Dec. 467 (BIA 1987); *Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987); *Matter of Shirdel,* 19 I&N Dec. 33 (BIA 1984); *Matter of Salim,* 18 I&N Dec. 311 (BIA 1982); 8 C.F.R. § 208.14(a) (1995); *see also Matter of Gharadaghi,* 19 I&N Dec. 311 (BIA 1985).

The applicant has the evidentiary burdens of proof and persuasion in any application for asylum or withholding under section 208(a) of the Act. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985), *modified on other grounds, Matter of Mogharrabi, supra; see also Young v. INS,* 759 F.2d 450 (5th Cir.), *cert. denied,* 474 U.S. 996 (1985). The applicant must establish the facts underlying his claim for asylum or withholding of deportation by a preponderance of credible, probative evidence. Where an alien is unable to produce documentary evidence to corroborate the basis for his asylum claim, his testimony alone will suffice to prove his eligibility for asylum, but only if it is credible. *See* 8 C.F.R. § 208.13(a) (1995).

The applicant has the ultimate burden of convincing the deciders of the facts that he deserves asylum. In its decision, the majority makes the unwarranted finding that the applicant had established past persecution in Afghanistan on account of political opinion. I am unconvinced that he has met his burden. The Immigration Judge found that the applicant's testimony was unworthy of belief. I find that this credibility finding of the Immigration Judge was proper. In his decision, the Immigration Judge stated the following with regard to the applicant's credibility:

> I find that the applicant's story might warrant a grant of asylum if I could accept his testimony as true. I have a great deal of trouble accepting the applicant's story as being candid and forthright and completely truthful. One problem is that the applicant's [sic] studiously avoided looking in my direction while he testified. Even after I asked him to look at me, he looked down at the table, he looked past the interpreter to the wall, but he certainly avoided on all occasions looking at me and that made me wonder if he was being truthful in his testimony.
>
> In addition, the applicant said he couldn't remember dates. Nowhere else in the applicant's testimony was there an indication that his memory had suffered for any reason. The applicant has been in the United States for a year and no medical evidence was presented which would indicate that the applicant had indeed been victimized by beatings or electric shock treatment or any other type of torture. And no evidence of course was presented to indicate that the applicant's memory may have been affected by his treatment at the hands of government security forces.

The applicant's story as a whole leaves some question in my mind. One wonders why this applicant had to leave Afghanistan when his brother who is a full-fledged member of the Mujahedin apparently could remain behind. And it seemed to me that when pressed on that issue, the applicant indicated that his primary reason for leaving Afghanistan was because he did not wish to serve in the military. And he didn't want to kill his fellow brother Moslems while fighting for the government of power in Afghanistan.

The applicant seemed to dismiss the situation of his wife and children who were left behind in Afghanistan and that doesn't seem to be a reasonable solution to his situation unless the applicant simply expected these family members to join him after he settled his [i]mmigration problems in the United States.

. . . .

Based on the evidence of record, including my feeling that the applicant's testimony was not credible, including the fact that the applicant, he made no effort to corroborate his story, although there are a large number of people in the New York City metropolitan area or at least some people in the New York City metropolitan area who are from Afghanistan and might have been familiar with the political situation there, including any assistance that one might have given to the so-called freedom fighters . . . .

Immigration Judge's decision at 4-6.

An Immigration Judge's finding regarding the credibility of a witness is ordinarily given significant deference since he is best able to observe the witness' demeanor. *Matter of Kulle,* 19 I&N Dec. 318 (BIA 1985); *Matter of Boromand*, 17 I&N Dec. 450 (BIA 1980); *Matter of Teng*, 15 I&N Dec. 516 (BIA 1975); *Matter of S-*, 8 I&N Dec. 574 (BIA 1960); *Matter of T-,* 7 I&N Dec. 417 (BIA 1957). For example, an Immigration Judge can determine whether a witness is testifying truthfully or falsely by observing the expression of the witness' countenance, how he sits, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech, and other non-verbal communication. He is in the best position to determine the accuracy, reliability, and truthfulness of the testimony he hears and, consequently, his factual findings ordinarily will not be disturbed. *Wing Ding Chan v. INS*, 631 F.2d 978 (D.C. Cir. 1980), *cert. denied*, 450 U.S. 921 (1981); *Vasquez-Mondragon v. INS*, 560 F.2d 1225 (5th Cir. 1977); *Kokkinis v. District Director*, 429 F.2d 938 (2d Cir. 1970); *Espinoza-Ojeda v. INS*, 419 F.2d 183 (9th Cir. 1969); *Volianitis v. INS*, 352 F.2d 766 (9th Cir. 1965); *Hamadeh v. INS,* 343 F.2d 530 (7th Cir.), *cert. denied*, 382 U.S. 838 (1965); *Matter of Kulle, supra; Matter of Boromand, supra; Matter of Teng, supra; Matter of S-, supra; Matter of T-, supra.*

In my view, the adverse credibility finding of the Immigration Judge was proper and is supported by the record. The Immigration Judge has stated his findings in a clear and unambiguous manner. I would affirm his credibility finding, including his determinations regarding the applicant's demeanor, and I would also independently find the applicant not to be credible. The applicant's asylum story is neither plausible nor believable. His testimony, under these circumstances, cries out for corroboration. However, the record

is essentially devoid of corroborative evidence. The majority facilely dismisses the Immigration Judge's credibility findings even though the Immigration Judge fully observed the applicant under examination and the majority did not. The majority engages in suppositions, speculations, and substitution of its own scenarios to explain the applicant's asylum story and the behavior of the applicant at his hearing. The majority's conclusory statements concerning credibility have little value. Therefore, I find that the applicant's testimony is not worthy of belief.

I find that the applicant has failed to offer sufficient probative evidence necessary to establish past persecution in Afghanistan on account of his race, religion, nationality, membership in a particular social group, or political opinion. I therefore conclude that he is not statutorily eligible for the grant of asylum. Accordingly, I would dismiss the appeal.