[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 10, 2005
THOMAS K. KAHN
CLERK

No. 04-13551
Non-Argument Calendar
_____

Agency Nos. A76-526-300 and A76-526-302

MARIA AMPARO PEREZ DE HINCAPIE,
SANTIAGO PEREZ HINCAPIE, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(May 10, 2005)**

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Maria Amparo Perez de Hincapie, Santiago Perez Hincapie, and Jhon Henry Hincapie, through counsel, petition for review of the final order of the Board of Immigration Appeals ("BIA") summarily affirming the decision of the immigration judge ("IJ") finding that Hincapie's testimony was not credible and denying Hincapie's application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[1]  Because Hincapie's removal proceedings commenced after 1 April 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), govern her petition for review.

Substantial evidence supports the IJ's finding that Hincapie's testimony was not credible because her testimony was materially inconsistent with her asylum application, her "credible-fear" interview, and other evidence.  Additionally, the IJ did not err in finding that the evidence failed to establish a well-founded fear of persecution, because Hincapie's additional evidence would not compel a reasonable factfinder to find that the requisite fear of persecution exists.  Moreover,

---

[1]  Maria Hincapie is the primary applicant.  Her son and grandson are derivative applicants and, therefore, rely on Hincapie's asylum application.  Accordingly, we refer to Hincapie and her claims for relief.

2

Hincapie has not challenged on appeal of the IJ's finding that she did not show that relocation within Colombia was not possible. Accordingly, the petition is **DENIED**.

## I. BACKGROUND

On 1 December 2000, Hincapie, a native and citizen of Colombia, attempted to enter the United States with her son and grandson without presenting any valid entry documents. According to a record of a sworn statement given on the day of her arrival, Hincapie attested that she came to the United States because she was afraid of living in Colombia. She stated that she would be harmed by the guerillas if she was returned to her home country, because they thought that she was an informant and had threatened the lives of her and her family. She further stated that she did not work outside the home, but that she did some sewing.

In December 2000, the Immigration and Naturalization Service ("INS") issued a notice to appear ("NTA") to Hincapie, charging her with removability under the INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), for seeking to procure a visa, other documentation, or admission into the United States by fraud or willfully misrepresenting a material fact, and under INA § 212(a)(7)(A)(i)(I), for failing to possess a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the INA. Hincapie submitted to a

credible fear interview, in which she attested that, in Colombia, she owned a store where she prepared and sold food. She stated that she was threatened at the store, where she received a letter that said she had informed the military about the guerillas. She further stated that she had not informed the military about the guerillas' activities. The asylum officer found that Hincapie established a credible fear of persecution on account of her imputed political opinion.

On 31 October 2001, Hincapie submitted a claim for asylum and withholding of removal, alleging persecution on account of her political opinion and membership in a particular social group. In the application, Hincapie stated that the National Liberation Army ("ELN") threatened her because they believed that she gave information about the guerillas, which she had overheard during their conversations at the store ("kiosko"), to the paramilitary. She further stated that neither she nor any of her family had given this information to the paramilitary, because it would have been too dangerous.

To supplement her application, Hincapie submitted letters from Jesus Helmes Suescun and Luis Eduardo Lopez, customers of the store who stated that Hincapie had confided in them regarding the threats she had received, and a letter from Gloria Cruz Lozada, which stated that Hincapie had worked for three months at a store in the Jamundi area.

4

The government submitted copies of round-trip tickets from Cali to Orlando for Hincapie, Jhon, and Santiago. In addition, the government submitted copies of: (1) Hincapie's passport, issued 5 July 1999; (2) Hincapie's visa, issued April 2000; (3) Jhon's passport, issued 5 July 1999; (4) Jhon's visa, issued April 2000; (5) Santiago's passport, issued 1 August 2000; and (6) Santiago's visa, issued October 2000.

At a hearing on Hincapie's asylum application, Hincapie testified that she thought her visa was good. She testified that she made lingerie and worked at a stand where she prepared food. She further testified that she left Colombia after receiving threatening letters from the ELN. Hincapie stated that she overheard guerillas planning an attack, and four or five days later received an envelope containing a threatening letter. She further stated that she did not inform the police, but that she had informed the military. After receiving another threat two weeks later, she locked up the store and returned home. She testified that she received a telephone call from the ELN a few days later, so she decided to leave. According to Hincapie, she did not tell the immigration officer that she had informed the army because she was frightened and had too many problems on her mind. She stated that she had informed the military about the guerillas' plans, but had not told them of the threats.

On cross-examination, Hincapie testified that she had not stated on her application for asylum that she had informed the military about the guerillas' plans because it escaped her mind. She further testified that she obtained her passport and Jhon's passport in November 2000, and, when asked why the issue date on her passport stated May 1999 and Jhon's was August 2000, she replied, "[t]hat's strange." Administrative Record ("AR") at 102. She stated that she flew into Orlando so that she could take her grandson to Disney World. In response to questions from the IJ, Hincapie testified that she was not intending to return to Colombia when she left, and that she bought round-trip tickets because "one didn't know what could happen." AR at 111-12.

The IJ denied Hincapie's application for asylum and withholding of removal and sustained allegation three of the NTA as well as the fraud charge. The IJ found that Hincapie's claim that she was not aware that the visas and passports were fraudulent was not believable. The IJ found that Hincapie's testimony regarding when she obtained the passports was inconsistent, because she stated that she received them in November 2000, while the passport of Hincapie and Jhon reflect an issuance date of 5 July 1999, and Santiago's passport reflects an issuance date of 1 August 2000. The IJ further found that Hincapie was "equivocal" in her testimony as to whether she intended to return to Colombia because she, Jhon, and

6

Santiago had round-trip tickets from Cali to Orlando. AR at 38-39. According to the IJ, Hincapie failed to establish past persecution or a well-founded fear of persecution. The IJ found that Hincapie's testimony was not credible because it was materially inconsistent regarding whether she had informed the Colombian military of the ELN guerillas' plans—in her credible fear interview and asylum application she stated that she had not, but during her asylum testimony she stated that she had. The IJ further found that Hincapie stated during her credible fear interview that guerillas had threatened her, but in her asylum application and testimony she claimed that she was threatened by ELN guerillas. The IJ found that Hincapie's claims of operating the store were not credible because she told the immigration inspector that she did not work outside the home. According to the IJ, Hincapie also failed to show that she could not live elsewhere in Colombia.

Hincapie appealed to the BIA, arguing that the IJ erred in determining that Hincapie lacked credibility, because her inconsistent statements were not material to the asylum claim. She contended that her testimony showed past persecution and fear of future persecution based on political opinion. The BIA summarily affirmed the IJ's decision, pursuant to 8 C.F.R. § 1003.1(e)(4). This petition for review followed.

Hincapie argues on appeal that the IJ erred in finding that she failed to establish a well-founded fear of persecution because she showed that she feared future persecution by the ELN based on an imputed political opinion through her application for asylum, supporting documentation, and testimony. She further contends that the IJ erred in determining that her testimony was not credible, because federal courts have held that credibility does not turn on whether someone has presented a fraudulent document at the border when fleeing persecution. She asserts that the discrepancy caused by the issue dates of the passports and her testimony should not have been considered because the passports were not obtained from the embassy. She argues that her failure to state in her credible fear interview that she informed the military of the impending guerilla attack, as she stated in her testimony, should not be a basis for an adverse credibility determination because the discrepancy was minor and the interview was very brief.

When the BIA does not render its own opinion but rather adopts the IJ's opinion, then we review the IJ's decision. D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). Legal determinations are reviewed de novo. Id. at 817. Factual determinations, including credibility determinations, are reviewed under the substantial evidence test, and we "'must affirm the [] decision if it is supported by reasonable, substantial, and probative evidence on the record

8

considered as a whole.'" Id. at 817-18. Under this highly deferential standard of review, a denial of asylum may be reversed only if the evidence would compel a reasonable factfinder to find that the requisite fear of persecution exists. INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1, 112 S.Ct. 812, 815 & n.1 (1992). "Credibility determinations likewise are reviewed under the substantial-evidence test." D-Muhumed, 388 F.3d at 818.

Upon review of the record and upon consideration of the parties' briefs, we find no reversible error.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General ("AG") has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed, 388 F.3d at 818.

9

Uncorroborated but credible testimony alone from the applicant may be sufficient to sustain the burden of proof for asylum. 8 C.F.R. § 208.13(a). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Id. "Of course, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant. That is, the IJ must still consider all evidence introduced by the applicant." Id.

Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishment as the applicant repeatedly recounts his story. See In re B-, 21 I & N Dec. 66, 70 (BIA 1995). The weaker the applicant's testimony, the greater the need for corroborative evidence. See In re Y-B-, 21 I & N Dec. 1136, 1139 (BIA 1998). Moreover, an adverse credibility finding must go to the "'heart of the asylum claim,'" and not be based on minor discrepancies, inconsistencies, or omissions. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); see also Pop v. INS, 270 F.3d 527, 531 (7th Cir. 2001) (failure to list every incident of persecution should not

10

result in credibility challenges). Additionally, if the IJ provides specific examples of vague, inconsistent, and implausible statements by the alien, and the alien does not provide corroborating evidence to bolster the weaknesses in his testimony, an adverse credibility finding is supported by substantial evidence. See Chebchoub v. INS, 257 F.3d 1038, 1042-44 (9th Cir. 2001).

Hincapie's argument on appeal that the date on the passports should not be considered because she did not obtain them from the embassy is contradicted by her testimony that she obtained the passports legally in November 2000. This testimony was inconsistent with the evidence because her passport and Jhon's passport were issued on 5 July 1999, and Santiago's passport was issued on 1 August 2000. In addition to this inconsistency, the IJ's adverse credibility finding is supported by additional inconsistencies in Hincapie's testimony: (1) she stated that she did not intend to return to Colombia, but had purchased three round-trip tickets from Cali to Orlando; (2) she testified that she left Colombia because of threatening letters from the ELN, but she also testified that she came to Orlando to take her grandson to Disney World; (3) she stated that she had informed the Colombian military of the ELN guerillas' plans, but in her "credible-fear" interview and asylum application she stated that she had not; and (4) she claimed in her "credible-fear" interview, asylum application, and asylum hearing testimony

11

that she operated a store, but told the immigration inspector that she did not work outside the home. Although Hincapie provided corroborating evidence to support her claims of receiving threats while working in the Kiosko—the unsworn letters from customers and the owner of the Kiosko—this evidence does not affect the other inconsistencies in her testimony, which go to the heart of her claim. See Chebchoub, 257 F.3d at 1042-44; Gao, 299 F.3d at 272. Thus, the IJ's adverse credibility finding was supported by "'specific, cogent reasons'"—Hincapie's testimony contained internal inconsistencies and was contradicted by the evidence—and substantial evidence. See Forgue, 401 F.3d at 1287; D-Muhumed, 388 F.3d at 817-18. Moreover, consideration of the additional evidence presented by Hincapie—the unsworn letters—do not compel a reasonable factfinder to conclude that a well-founded fear of future persecution exists, especially in light of the other record evidence contradicting Hincapie's asylum claim, such as the passport dates and round-trip tickets. See Forgue, 401 F.3d at 1287; Elias-Zacarias, 502 U.S. at 481 & n.1, 112 S.Ct. at 815 & n.1. Therefore, the IJ's denial of asylum was supported by substantial evidence.

### III. CONCLUSION

Substantial evidence supports the IJ's finding that Hincapie's testimony was not credible because her testimony was materially inconsistent with her asylum

12

application, her "credible-fear" interview, and other evidence. Morever, the IJ did not err in finding that the evidence failed to establish a well-founded fear of persecution, because Hincapie's additional evidence would not compel a reasonable factfinder to find that the requisite fear of persecution exists. Accordingly, the petition is **DENIED.**