

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-14-2005

# Sapunzhiu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3525

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sapunzhiu v. Atty Gen USA" (2005). *2005 Decisions.* Paper 551.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/551

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 04-3525

————

FISNIK SAPUNZHIU,
                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
                            Respondent

————

Petition for Review of the Order
of the Board of Immigration Appeals
(A95-471-607)

————

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2005

Before:  SLOVITER, BARRY and SMITH, Circuit Judges

(Filed September 14, 2005)

————

OPINION

SLOVITER, Circuit Judge.

Fisnik Sapunxhiu,[1] a native and citizen of the Federal Republic of Yugoslavia, seeks review of a final order issued by the Board of Immigration Appeals ("BIA") on August 2, 2004, reversing the Immigration Judge's ("IJ's") grant of asylum. This court has jurisdiction pursuant to 8 U.S.C. § 1252(a). Although we find the events to which Sapunxhiu testified to have been truly unconscionable, for the reasons stated below we will deny the petition for review.

## I.

Because the parties are familiar with the factual and procedural background of this case, we refer only to those facts that are pertinent to our disposition. Fisnik Sapunxhiu arrived in the United States on August 7, 2001, on a non-immigrant visa. In June 2002, he applied for asylum and withholding of removal. He was interviewed by the INS[2] and referred to the Immigration Court. On September 23, 2002, the INS issued a Notice to Appear ("NTA") charging him as removable under § 237(a)(1)(B) of the Immigration

---

[1] We will refer to Petitioner as Sapunxhiu, as that is the name used by the IJ, the BIA, and all the immigration documents. The cover of Petitioner's brief, as well as the Government's brief, spell the name with a 'z' instead of an 'x.'

[2] Effective March 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Bureau of Citizenship and Immigration Services within the Department of Homeland Security. The BIA remains within the Department of Justice. Homeland Security Act of 2002, 6 U.S.C. §§ 271, 291.

and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for overstaying his visa.

Sapunxhiu appeared before the IJ on October 8, 2002, admitted the charges in the NTA and conceded removability. He also renewed his request for asylum and withholding of removal, and asked for voluntary departure in the alternative.

During the subsequent merits hearing, Sapunxhiu testified about the incident that gave rise to his application. On the morning of May 2, 1999, Serbian soldiers broke into his home and demanded money. The soldiers tried to force Sapunxhiu to admit that he was a member of the Kosovo Liberation Army ("KLA"), even though he had never been a member of the KLA and was only fifteen years old at the time. Sapunxhiu and his parents were beaten, and his sister forced into another room where she was raped. His family could only wait helplessly, held at gunpoint by other soldiers. When the soldiers returned with Sapunxhiu's sister, they gave the family ten minutes to leave Kosovo.

Sapunxhiu's mother gathered what she could, and the family boarded a bus that took them to Albania. After living with a host family for about two months, they returned to Kosovo. Sapunxhiu testified that over the next two years he experienced depression so severe that he had trouble forming relationships and distanced himself from his family. Though he tried to seek mental help, his father refused to send him to a doctor for fear of the stigma.

In addition to his own testimony, Sapunxhiu offered corroborating evidence including testimony and a psychiatric evaluation by Dr. Damon Delston, an expert on

3

Posttraumatic Stress Disorder ("PTSD"), a State Department Country Report on Human Rights Practices, and an Amnesty International Report. Dr. Delston interviewed Sapunxhiu and diagnosed him with PTSD-Chronic, concluding that placing Sapunxhiu "in a milieu that reminds him of past trauma" would exacerbate symptoms that are currently in abeyance. App. at 192. Dr. Delston also testified that Sapunxhiu was in denial and could be treated with psychotherapy.

After the hearing, the IJ issued an oral opinion granting Sapunxhiu withholding of removal and asylum pending the completion of security checks. Once the security checks were completed, the IJ formally granted relief.

In her opinion, the IJ found that Sapunxhiu met his burden of proof to show past persecution. The IJ also found that the INS demonstrated, by a preponderance of the evidence, changed country conditions in Kosovo which rebutted the presumption arising from past persecution and found that Sapunxhiu no longer had a well-founded fear of persecution. However, the IJ also found that Sapunxhiu had demonstrated compelling reasons for being unwilling or unable to return to Yugoslavia as a result of the severity of his past persecution, which caused his PT-SD. The IJ granted the relief sought.

The INS appealed to the BIA, which reversed the IJ's decision in a per curiam order on August 2, 2004, and granted Sapunxhiu thirty days voluntary departure. This appeal followed.

4

## II.

Where the BIA conducts an independent analysis of the record, the Court reviews only the BIA's decision. Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). We review the BIA's findings of fact for substantial evidence and uphold unless a "reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added); Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). We review the BIA's discretionary denial of asylum under 8 U.S.C. § 1158(a) for abuse of discretion, and will uphold unless it is manifestly contrary to the law. 8 U.S.C. § 1252(b)(4)(D).

## III.

The BIA agreed with the IJ's finding that Sapunxhiu had established past persecution, and that the INS had successfully rebutted the resulting presumption of a well-founded fear of future persecution. However, the BIA, in an opinion by a single judge, reversed after finding that the IJ erred in granting relief based on the so-called humanitarian exception. See 8 C.F.R. § 1208.13(b)(3)(iii)(A) (2004). The BIA concluded that Sapunxhiu failed to meet his burden of proof to show that persecution rose to the level of the compelling reasons standard.

Sapunxhiu first argues that the BIA strayed from its case law in denying relief by requiring that the petitioner suffered a permanent disability from his past persecution. However, the BIA never made an explicit finding that the denial of relief was based on

5

the lack of a permanent disability. Rather, the decision was founded on prior BIA decisions which required a level of persecution beyond that experienced by Sapunxhiu; the lack of a permanent disability was not dispositive. The BIA supported its decision in this case by citation and discussion of its earlier precedent.

Sapunxhiu also argues that the BIA did not provide a rational explanation of why his past persecution was not severe enough to warrant a grant of humanitarian asylum. However, the BIA not only explained why Sapunxhiu failed to show compelling reasons, but it cited cases in support of its decision. The decision briefly recounted the facts of the instant case and concluded that the persecution did not meet the standard of Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989), where the applicant's suffering began at the age of eight and continued into adulthood, or Matter of B-, 21 I. & N. Dec. 66 (BIA 1995), where the applicant was detained for thirteen months and endured four months of involuntary military service, in addition to physical torture and psychological abuse. The BIA's decision that Sapunxhiu's suffering did not rise to the level of the petitioners in those cases was not unreasonable. There is nothing in the record that suggests the BIA's factual findings were not supported by substantial evidence, or that the BIA abused its discretion in reversing the IJ's discretionary grant of asylum.

Finally, Sapunxhiu argues that the BIA failed to follow its own precedent by not considering the discretionary factors that warrant a favorable adjudication of his claim. The BIA has determined that such factors are to be considered "in past persecution cases

6

where a well-founded fear of persecution is presumed to exist because country conditions have not been shown to have changed or in cases where the 'compelling reasons' requirement has been satisfied." Matter of N-M-A, 22 I. & N. Dec. 312, 325 n.7 (BIA 1998). Here, there was a conceded change in country conditions. In addition, these factors have no bearing on the determination of whether Sapunxhiu met the compelling reasons requirement. Thus, Sapunxhiu's contention that the BIA erroneously failed to consider discretionary factors is based on a misinterpretation of the BIA's language.

It follows that although we may have decided this case differently, we are bound to uphold the BIA's decision.

**IV.**

For the above reasons, Sapunxhiu's petition for review will be denied.