[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 1, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15519
Non-Argument Calendar
_____

BIA No. A97-955-148

JING BIAO LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 1, 2007)

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Jing Biao Lin, a native and citizen of China, petitions this court for review of the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") order of removal and denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), 8 U.S.C. §§ 1158, 1231; 8 C.F.R. 208.16. After a thorough review of the record, we deny the petition.

Lin attempted to enter the United States in 2004 without valid entry documents, and the INS issued a notice to appear charging him with removability under INA § 212(a)(7)(A)(i)(I); 8 U.S.C. § 1182(a)(7)(A)(i)(I). Lin filed an application for asylum, withholding of removal, and relief under the CAT, claiming that he had been persecuted based on his practice of Falun Gong.

According to the testimony, Lin lived in Minhou County, Fujian Province, China. Because his work left him very tired, a friend introduced him to the practice of Falun Gong as a method to treat his exhaustion. Lin described Falun Gong as a religion or faith dedicated to truthfulness, tolerance, and kindness. Beginning in January 2004, Lin practiced Falun Gong two or three times a week on the balcony of his home in the mountains. Because few people passed by, Lin did not think anyone would see him practicing. However, someone must have seen him because, on January 15, police came to the house while Lin was not at home. Lin's friend was there and was arrested by police. Lin was able to escape after a

2

neighbor warned him about the police as he was coming home. Lin hid at his cousin's house for four or five days. On January 16, police detained Lin's parents because they were looking for Lin. After holding Lin's parents for about five days, the police released them, although the police searched their house. Despite the fact that police were looking for him, Lin was able to leave the country and come to the United States without being stopped. Lin stated that he feared he would be jailed and tortured if he returned to China.

On cross examination, the government questioned why the detention certificate named only Lin's father, and how it was issued on January 14 and listed Lin's escape as the basis for detention, although Lin had testified that he had not escaped until January 15. Lin could not explain the discrepancy, but said it was probably a mistake. He informed the court that he did not have a copy of the arrest warrant because the police did not leave it with Lin's parents. He also could not explain why he practiced Falun Gong on his balcony if he knew it was illegal. Additionally, Lin had no evidence that his parents' home had been searched. He admitted that he had not informed the asylum officer of this fact, but he explained that the officer had not asked him. Lin also confirmed that he had been practicing Falun Gong for only two weeks when the police allegedly came looking for him. Although he stated at first that he had not practiced since he left China, he later testified that he had been practicing in the United States, including the day before

3

the hearing, through the internet and with a group in New York. He did not have any evidence to verify this statement.

In support of his application, Lin submitted reports corroborating the Chinese government's actions to repress "cults" such as Falun Gong, which included arrests and imprisonment of practitioners, torture or abuse, and the use of re-education labor camps and psychiatric treatment such as medication and electric shock therapy. He also submitted the detention certificate, which listed January 16, 2004 as the date of detention and January 14 as the date of issuance. It stated that Lin's father had been detained because Lin had escaped while under an arrest warrant for practicing Falun Gong.

The IJ denied relief, concluding that Lin lacked credibility in light of the inconsistencies in his story and the documentation. The IJ stated that he was not convinced that Lin had engaged in Falun Gong because Lin had little knowledge of its practices, and he found it unbelievable that a person would practice in the open when he knew it to be illegal. The IJ further noted that Lin had omitted information from the asylum interview. Additionally, the IJ explained that the detention certificate was likely not authentic, and he noted that Lin could not explain the irregularities in the dates.

4

Lin appealed to the BIA, which affirmed the IJ's adverse credibility finding. Lin now petitions this court for review, challenging the adverse credibility determination and the denial of relief from removal.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the decision of the IJ. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA's decision was based on a legal determination, we review the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006); D-Muhumed, 388 F.3d at 817. The BIA's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation and internal marks omitted). Additionally, "[u]nder the substantial evidence test, [this court reviews] the record evidence in the light most favorable to the agency's decision and draw[s] all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citing Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted). "A credibility determination, like any fact finding, may not be

overturned unless the record compels it."[1]  Forgue v. U.S. Att'y Gen., 401 F.3d

1282, 1287 (11th Cir. 2005) (citations and quotations omitted).

The Attorney General has discretion to grant asylum if an alien meets the

INA's definition of "refugee."  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  The INA

defines "refugee" as follows:

> [A]ny person who is outside any country of such person's
> nationality . . .  and who is unable or unwilling to return to, and is
> unable or unwilling to avail himself or herself of the protection of,
> that country because of persecution or a well-founded fear of
> persecution on account of . . . religion . . . or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) & (B).  The asylum applicant bears the burden of

proving refugee status.  Al Najjar, 257 F.3d at 1284.  To meet this burden, the alien

must, with specific and credible evidence, establish (1) past persecution on account

of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed

factor will cause such future persecution.[2]  8 C.F.R. § 208.13(a), (b); Al Najjar, 257

F.3d at 1287.

If an alien's testimony is credible, it may be sufficient, without

corroboration, to satisfy his burden of proof.  8 C.F.R. §§ 208.13(a), 208.16(b);

---

[1] "The trier of fact must determine credibility, and this court may not substitute its judgment for that of the IJ with respect to credibility findings."  D-Muhumed, 388 F.3d at 818.

[2] If Lin cannot establish eligibility for asylum relief, he cannot meet the more stringent burden for withholding of removal or CAT.  Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006); Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

Forgue, 401 F.3d at 1287. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. (internal citation omitted). However, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by the asylum applicant. D-Muhumed, 388 F.3d at 818. Once the IJ explicitly finds that the alien lacks credibility, the burden shifts to the alien to show that the IJ's credibility determination "was not supported by specific, cogent reasons or was not based on substantial evidence."[3] Chen v. U.S. Att'y Gen, 463 F.3d 1228, 1231 (11th Cir. 2006); Forgue, 401 F.3d at 1287. Indications of reliable testimony include consistency on direct examination, consistency with the written asylum application, and the absence of embellishments.[4] See In re B-, 21 I & N Dec. 66, 70 (BIA 1995).

---

[3] The IJ must make explicit adverse credibility findings. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

[4] The REAL ID Act changed the credibility standard for applications made on or after May 11, 2005, confirming that inconsistencies need not go to the heart of the claim. 8 U.S.C. § 1158(b)(1)(B)(iii) (as amended by the REAL ID Act § 101(a)(3)); see also 8 U.S.C. § 1231(b)(3)(C) (making § 1158(b)(1)(B)(iii) applicable to withholding of removal claims). This change is not applicable to Lin because his application was filed in 2004. Moreover, although this court has not determined whether the inconsistencies must go to the heart of the claim for pre-REAL ID Act claims, we need not resolve that issue here because Lin's inconsistencies are material and relate to the basis of his alleged fear of persecution.

Viewing the evidence in the light most favorable to the agency, we conclude that the IJ's and BIA's adverse credibility determinations were supported by substantial evidence. Moreover, the IJ did not base his decision on the adverse credibility finding alone, but considered the other evidence and concluded that it only added to the inconsistencies. The record before us does not compel the conclusion that the IJ's adverse credibility determination was unsupported by the record. Chen, 463 F.3d at 1232-33.

Nevertheless, even if Lin was credible, the denial of asylum relief was proper. The evidence Lin presented was insufficient to support a conclusion that he suffered past persecution on account of his religious affiliation, or that he has a well-founded fear that his affiliation will cause future persecution. "'[P]ersecution' is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations omitted). "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006). Here, Lin was never accosted by the authorities because of his religious beliefs, he had only been practicing Falun Gong for two weeks at the time of the alleged detention of Lin's parents, and Lin was able to

8

leave the country without incident.  Under these facts, we cannot conclude that Lin

suffered persecution.  Accordingly, we **DENY** the petition.