[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 28, 2005
THOMAS K. KAHN
CLERK

No. 05-12793
Non-Argument Calendar

_____

BIA No. A97-190-847


WAHYUDI INGKIRIWANG,


                                          Petitioner-Appellant,


versus


U.S. ATTORNEY GENERAL,


                                          Respondent-Appellee.


_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

(December 28, 2005)


Before DUBINA, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Petitioner Wahyudi Ingkiriwang, a native and citizen of Indonesia, petitions, through counsel, for review of the final order of the Board of Immigration Appeals (BIA), which affirmed an immigration judge's (IJ's) determinations that Ingkiriwang's asylum claim was untimely, and that he had not established eligibility for withholding of removal under the Immigration and Nationality Act (INA) or withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT relief), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c).

## I. *Jurisdiction to Consider Asylum Claim*

Ingkiriwang argues on appeal that we have jurisdiction to hear his claims for relief, that he is entitled to "Asylum/Withholding," and is eligible for asylum under "the Torture Convention." However, he does not address the findings of the IJ and the BIA that his asylum claim was time-barred.

When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* Here, the BIA expressly adopted the IJ's reasoning and briefly articulated its reasons for doing so. Thus, we should review the decisions of both the IJ and the BIA.

"An asylum application must be 'filed within 1 year after the date of the

2

alien's arrival in the United States.'" *Chacon-Botero v. U.S. Attorney Gen.*, 427 F.3d 954, 956 (11th Cir. 2005) (quoting 8 U.S.C. § 1158(a)(2)(B)).  An untimely application "may be considered . . . if the alien demonstrates . . . extraordinary circumstances relating to the delay in filing an application."  INA § 208(a)(2)(D); 8 U.S.C. § 1158(a)(2)(D).  The determination of whether an alien can apply for asylum, however, is left exclusively to the Attorney General as "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."  INA § 208(a)(3); 8 U.S.C. § 1158(a)(3); *see also Mendoza v. U.S. Attorney Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (noting that 8 U.S.C. § 1158(a)(3) "divests our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing"); *accord Chacon-Botero*, 427 F.3d at 957.

Accordingly, we conclude from the record that we lack jurisdiction and dismiss the petition for review to the extent that it seeks review of the denial of the Ingkiriwang's asylum claim.

## II.  *Eligibility for Withholding of Removal*

Ingkiriwang argues that he provided credible testimony to support his withholding of removal and CAT relief claims because the IJ allegedly questioned him in a biased manner, used overly restrictive criteria to measure his credibility,

3

and did not consider Ingkiriwang's answers that would have supported finding him credible, such as his ability to define "baptism," "communion," and "Easter." He also argues that the IJ improperly considered his father's return to Indonesia as safe because his father did not return to Indonesia voluntarily, but was instead deported.

To the extent that the BIA's decision was based on a legal determination, we review the decision *de novo*. *D-Muhumed v. U.S. Attorney Gen.*, 388 F.3d 814, 817 (11th Cir. 2004). We review the BIA's factual determinations under the substantial evidence test, and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar,* 257 F.3d at 1283-84 (quotation omitted). "[W]e cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below." *Id.* at 1278. Therefore, we will reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004), *cert. denied*, 125 S. Ct. 2245 (2005); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . ."). We also review a credibility determination under the substantial evidence test, and "may not substitute [our own] judgment for that of the BIA with respect to credibility findings." *D-Muhumed*, 388 F.3d at 818.

4

An alien is entitled to withholding of removal under the INA if he can show that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Mendoza*, 327 F.3d at 1287; *see also* INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." *Mendoza*, 327 F.3d at 1287. Although the INA does not expressly define "persecution," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted). In order to establish the necessary causal connection between the protected ground and the feared persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such [protected group status]." *See Al Najjar*, 257 F.3d at 1287 (quotations omitted).

The alien can meet his burden by showing either (1) past persecution in his country based on a protected ground, in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) a future threat to his life or freedom on a protected ground in his country. 8 C.F.R. § 208.16(b)(1). To establish a future threat to life or freedom, the alien need not show that he would be singled out individually for persecution; rather, he

5

may sustain the burden of proof by showing a pattern or practice of persecution of a group similarly situated to the applicant in which he is included or with which he may be identified. 8 C.F.R. § 208.16(b)(2).

If credible,[1] the alien's testimony "may be sufficient to sustain the burden of proof without corroboration." *Mendoza*, 327 F.3d at 1287 (quoting 8 C.F.R. § 208.16(b)). Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishment as the applicant repeatedly recounts his story. *See In re B-*, 21 I&N Dec. 66, 70 (BIA 1995); *see also Dailide v. U.S. Attorney Gen.*, 387 F.3d 1335, 1343 (11th Cir. 2004) (affirming the BIA's adverse credibility determination, which was based upon its finding that the alien's testimony conflicted with his answers to interrogatories, affidavit, deposition, and other documentary evidence). "[A]n adverse credibility determination does not alleviate the [BIA's] duty to consider other evidence produced by an asylum applicant." *Forgue v. U.S. Attorney Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). If the alien produces evidence beyond his own testimony, "it is not sufficient for the [BIA] to rely solely

---

[1]The REAL ID Act of 2005 amended the law regarding credibility determinations by adding INA §§ 208(b)(3)(B)(iii) , 1229a(c)(4)(C). Section 101(a)(3) and (d), Pub. L. No. 109-13, 119 Stat. 321, 303, 304-305. The Act states, however, that these provisions "shall apply to applications for asylum, withholding, or other relief from removal made on or after" the date of enactment of the Act, May 11, 2005. Pub. L. No. 109-13, 119 Stat. at 305. Therefore, because Ingkiriwang's application for asylum was filed before May 11, 2005, these provisions do not apply in this case.

on an adverse credibility determination in those instances." *Id.*

After reviewing the record, we conclude that substantial evidence supports the IJ's and the BIA's findings that Ingkiriwang had failed to establish eligibility for withholding of removal because he did not prove past persecution or a well-founded fear of future persecution. *See Mendoza*, 327 F.3d at 1287. There is no substantial evidence to compel reversing the IJ's credibility finding where Ingkiriwang was ignorant of certain religious terms and stated, "I'm not too big on Christianity but I just come to church to be thankful to God and to receive the teaching about (indiscernible)," he presented a baptismal certificate that listed his date of birth incorrectly and lacked a specific date of issuance, and, even though his family lived unharmed as practicing Christians in Indonesia, he was unable to corroborate his testimony with medical records. *See Adefemi*, 386 F.3d at 1027; *Dalide*, 387 F.3d at 1343.

Additionally, even if Ingkiriwang had been found credible, he failed to prove that the acts of which he complained rose to the level of past persecution, or an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (quotations omitted). Likewise, his testimony that his family lived unharmed in Indonesia for several years undermines any claim that there is a pattern or practice of persecuting similarly situated individuals in Indonesia. *Cf.* 8 C.F.R. § 208.16(b)(2). Thus,

7

Ingkiriwang's claim for withholding of removal must fail.

### III. *Eligibility for CAT Relief*

As previously stated, we review the BIA's legal determinations *de novo*, and its factual determinations for substantial evidence. *D-Muhumed*, 388 at 817; *Al Najjar*, 257 F.3d at 1283-84. We will reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." *Adefemi*, 386 F.3d at 1027; *see also* 8 U.S.C. § 1252(b)(4)(B). We also review a credibility determination under the substantial evidence test. *D-Muhumed*, 388 F.3d at 818.

To qualify for withholding of removal under Article 3 of the CAT, the applicant must show that it is more likely than not that she will be tortured if returned to the country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). CAT relief carries a higher legal standard than asylum, and is thus very difficult to meet. *Al Najjar*, 257 F.3d at 1303. "[F]or an act to

constitute 'torture' under CAT, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Cadet v. Bulger*, 377 F.3d 1173, 1181 (11th Cir. 2004).

Ingkiriwang has not made any arguments to support his request for CAT relief. Instead, he has simply entitled a section of his appellate brief, "Appellant's asylum eligibility under the Torture Convention." Therefore, he has failed to demonstrate that substantial evidence compels reversing the IJ's and the BIA's conclusion that he had failed to demonstrate that it was more likely than not that he would be tortured with the consent or acquiescence of the Indonesian government, in a manner not pursuant to lawful sanctions. *Adefemi*, 386 F.3d at 1027; *Cadet*, 377 F.3d at 1181.[2] Accordingly, Ingkiriwang's claim for CAT relief must also fail. Based on the foregoing, we dismiss the petition in part and deny it in part.

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

[2]Although Ingkiriwang argues in his appellate brief for stay of removal pending disposition of this appeal, alleging that he has met the "clear and convincing evidence" standard under 8 U.S.C. § 1252(f)(2), we previously denied Ingkiriwang's motion for stay of removal, noting that he had failed to meet 8 U.S.C. § 1252(f)(2)'s "clear and convincing evidence" standard, or the traditional test for injunctive relief. Ingkiriwang has not shown good reason why this issue should be reconsidered, and thus we do not consider his second request for stay of removal.