[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 24, 2007
THOMAS K. KAHN
CLERK

No. 06-16364
Non-Argument Calendar
_____

BIA No. A78-412-184

NURI KURT,

                                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(October 24, 2007)**

Before ANDERSON, BLACK, and MARCUS, Circuit Judges.

PER CURIAM:

Nuri Kurt petitions this Court for review of a final order of the Board of Immigration Appeals ("BIA"). The BIA affirmed the Immigration Judge's ("IJ's") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).

Kurt, a strict Muslim, wished to marry his girlfriend, Zaynep Ozdemir. Kurt expected that Ozdemir would wear a head scarf after they were married. Ozdemir's family did not grant permission for the marriage, in part because they did not want Ozdemir to wear a head scarf.

Kurt and Ozdemir fled to a nearby village and stayed with some of Kurt's relatives, but Ozdemir's family located Kurt and had him arrested. Kurt was detained for two days. During that time, Kurt was beaten by a group of policemen that included Ozdemir's cousin, and he sustained leg and nose injuries. Kurt was released after a judge determined that Ozdemir voluntarily ran away with him. Kurt did not seek medical attention for his injuries and recovered in about one week.

After Kurt was released from custody, he was confronted and threatened by Ozdemir's brother. Fearing retribution from Ozdemir's family, Kurt fled to Istanbul and began a construction job. One day his roommate, also from his

2

village, reported seeing members of Ozdemir's family looking for him at a café frequented by people from their village. Kurt determined that it was necessary to leave the country. He eventually decided to make his way to the United States. He booked a ticket to a final destination outside the United States, with a stopover in the United States, and intended to apply for asylum once he arrived in the United States.

The BIA concluded that Kurt was excludable for two reasons: he is an alien who at the time of application for admission was not in possession of necessary documentation, 8 U.S.C. § 1182(a)(7)(A)(i)(I), and he is an alien who by fraud or by willfully misrepresenting a material fact sought admission or other INA benefits, 8 U.S.C. § 1182(a)(6)(C)(i). Kurt does not deny that he lacks necessary documentation, but does challenge the BIA's finding of fraud or willful misrepresentation. Because the latter finding results in a permanent bar to entry, we must review the BIA's finding of fraud or misrepresentation, even though Kurt is removable on another ground. See Ymeri v. Ashcroft, 387 F.3d 12, 18 (1st Cir. 2004). We review this finding of fact under the substantial evidence test. See id. The BIA is due to be affirmed unless "a reasonable factfinder would be compelled to conclude to the contrary." Lonyem v. U.S. Attorney General, 352 F.3d 1338, 1340 (11th Cir. 2003).

3

"Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under [the INA] is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). The BIA's finding that Kurt was removable on this basis is supported by substantial evidence. The transit without visa ("TWOV") program, now suspended, allowed aliens to transit through the United States on their way to another country without a passport or visa. To use the privilege, the alien had to establish, inter alia, that he (1) was admissible under the immigration laws, (2) had confirmed means of transportation to at least the next country, and (3) would continue his journey on the same line or a connecting line within eight hours after his arrival or on the next available transport. 8 C.F.R. § 214.2(c) (1999). The transportation line was required to present the Service with a ticket showing the alien's confirmed and onward reservations out of the United States. Id.; see also 8 C.F.R. § 212.1(f)(1) (1999).

Kurt acknowledges that he fully intended to stay in the United States at the time he bought a ticket with a final destination outside the United States. Kurt argues that this did not constitute a material misrepresentation because the airline agents did not ask him if he had a visa to enter the United States, and he did not make a verbal representation regarding his travel plans. These facts are, however, not of consequence. Kurt represented that his final destination was not inside the

4

United States at the time he bought the ticket, which was not true and was material, because an alien has TWOV status only if his final destination is outside the United States. Moreover, the use of a misrepresentation to obtain TWOV status constitutes fraud, even when it is not made to an officer of the United States, because a TWOV alien does not meet a U.S. officer until he arrives in the United States and the damage is already done. See Matter of Shirdel, 19 I&N Dec. 33, 36-37 (BIA 1984). Kurt thus made a material misrepresentation (his final destination) in order to obtain a benefit under the Act (the benefit of TWOV status). See Ymeri, 387 F.3d at 19 (1st Cir. 2004) (TWOV privilege is "benefit"). Accordingly, the decision of the BIA is supported by substantial evidence, and its finding of fraud or material misrepresentation is affirmed.

Kurt next makes a claim for asylum. The Secretary of Homeland Security or the Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). To establish asylum eligibility, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a

statutorily listed factor, or (2) a "well-founded fear" of future persecution based on a statutorily listed factor. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. An alien who shows past persecution raises a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). An alien who has not shown past persecution may still be entitled to asylum if he can demonstrate a well-founded fear of future persecution on the basis of a protected ground. 8 C.F.R. §§ 208.13(b)(2). To establish a "well-founded fear," an applicant must show that he has a fear of persecution in his home country and that "there is a reasonable possibility of suffering such persecution if he or she were to return to that country." 8 C.F.R. § 208.13(b)(2)(i). The alien must also show that the persecution was or will be "at least in part" motivated by a statutorily protected ground. Sanchez Jimenez v. U.S. Attorney General, 492 F.3d 1223, 1233 (11th Cir. 2007).

The asylum applicant carries the burden of proving statutory refugee status. See D-Muhumed v. U.S. Attorney General, 388 F.3d 814, 818 (11th Cir. 2004). We review factual determinations under the substantial evidence test, and "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (internal quotations omitted). We may reverse a denial of asylum under the substantial evidence test "only if the evidence presented by the applicant is so

6

powerful that a reasonable factfinder would <u>have</u> to conclude that the requisite fear of persecution exists." <u>Mazariegos v. Office of the U.S. Att'y Gen.</u>, 241 F.3d 1320, 1323 (11th Cir. 2001) (emphasis in original).

Kurt first argues that the BIA erred in determining that he had not suffered past persecution on the basis of his religion. The BIA's decision is, however, supported by substantial evidence. First, the harassment he suffered at the hands of his girlfriend's family did not rise to the level of "persecution." We have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted). In Djonda v. U.S. Attorney General, 493 F.3d 1245 (11th Cir. 2007), the alien was detained for 36 hours and beaten by police, suffering multiple scratches and bruises that required him to stay in a hospital for two days. Id. at 1247. We nevertheless held that the record did not compel the conclusion that the applicant had suffered "persecution." Id. at 1249. Kurt's injuries at the hands of Ozdemir's family were no more severe: he admits that they healed within a week. He therefore cannot demonstrate that he was persecuted.

Second, the record does not compel a finding that Kurt was harassed because of his religion. Kurt argues that Ozdemir's family persecuted him because he was a strict Muslim. Substantial evidence, however, supports the BIA's finding that he

7

was not harassed because of his religious beliefs, but rather only because he ran away with Ozdemir. There is no evidence in the record that the family harassed him before he ran away with Ozdemir, even though they knew him to be a strict Muslim. In addition, the record supports the BIA's finding that when the family did procure Kurt's arrest and beating, it was not because of his religious beliefs or practices, but because he had run away with Ozdemir after they refused him permission to marry her. Kurt himself testified that Ozdemir's family members wanted and still want to hurt him not because he is a strict Muslim, but because his running away with the unmarried Ozdemir caused a "stain" on their family honor. The BIA was therefore entitled to conclude that Kurt was not persecuted on the basis of a statutorily protected factor.

Substantial evidence also supports the BIA's finding that Kurt does not have a well-founded fear of future persecution. Kurt argues that Ozdemir's family will kill him if he returns to Turkey, citing as evidence the fact that they were looking for him in Istanbul. In the first place, the BIA was entitled to conclude that this fear was not well-founded. Here there is substantial evidence supporting the BIA's conclusion that the Turkish government, if asked, would not be unable or unwilling to come to Kurt's assistance and protect him from Ozdemir's family. His arrest and beating by police was attributable to the fact that Ozdemir's cousin was a local police officer. Then, as soon as it became clear that Ozdemir willingly ran away

8

with Kurt, the court released him from custody. Substantial evidence supported the BIA's conclusion that the Turkish government has no interest in persecuting Kurt, and would protect him if asked.

In addition, to establish a well-founded fear, Kurt must demonstrate that "the persecution cannot be avoided by relocating within the subject country." Sepulveda, 401 F.3d at 1231. Kurt argues that he could not relocate anywhere in Turkey because Ozdemir's family found him even in Istanbul, that country's largest city. But Kurt did not seek the protection of the Turkish police in Istanbul. He alleges that he was afraid to go to the police because of the family's police connections. However, there is no evidence in the record to show that their connections extended to and throughout Istanbul. In fact, as the BIA pointed out, there is evidence that their connections were not particularly powerful even in their own village: the court released Kurt after finding that he had not kidnapped Ozdemir. Substantial evidence therefore supports the BIA's conclusion that Kurt could relocate within Turkey and thereby avoid any future persecution.

The BIA also was entitled to conclude that the threat posed by Ozdemir's family is, in any event, not based on a statutorily protected factor. As discussed above, the family only became hostile toward Kurt after he ran away with Ozdemir. Kurt testified that Ozdemir's family wishes to hurt him in order to cleanse the "stain" from their family honor. Substantial evidence therefore

9

supports the BIA's conclusion that this is a personal feud that does not constitute persecution on the basis of Kurt's strict Muslim religion.

Kurt also claims that he is entitled to withholding of removal and relief under the CAT. Withholding of removal, unlike asylum, is mandatory. To qualify for withholding of removal under the INA, an alien must show that if returned to his country, his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). Generally, where an alien fails to meet the "well-founded fear" standard for establishing asylum eligibility, he cannot establish the higher burden for withholding of removal. Al Najjar, 257 F.3d at 1292-93. Similarly, the burden on the alien seeking CAT relief is higher than the burden imposed on the asylum seeker. Id. at 1303. To show an entitlement to CAT relief, the petitioner must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Id. Because substantial evidence supported the BIA's determination that Kurt was not eligible for asylum, substantial evidence also supported its determination that Kurt is not entitled to withholding of removal or relief under the CAT. Accordingly, his petition for review is

**DENIED.**